WILLIE WHITEN V. THE STATE.

No. 2677.    Decided October 29, 1913.

1.—Murder—Former Jeopardy—Pleading.

Where the plea of former jeopardy did not set out the indictment, verdict and judgment, the same was insufficient.

2.—Same—Manslaughter—Valid Indictment.

Where the defendant was tried upon an indictment for murder and convicted of manslaughter, if the indictment was valid, the defendant could not be tried again for any higher offense than manslaughter.

3.—Same.— Accidental Shooting — Manslaughter — Self-Defense — Limiting Charge.

Where, upon trial of murder, the evidence raised the questions of self-defense, accidental shooting, etc., the court, in his charge on manslaughter, in limiting this offense should have included therein the issue of accidental shooting, etc.

4.—Same—Negligent Homicide—Charge of Court.

Where, upon trial of murder, the evidence raised the issue of negligent homicide, the same should have been properly submitted in the charge of the court.

5.—Same—Charge of Court—Manslaughter—Defense of Another.

Where, upon trial of murder, the evidence raised the issues of manslaughter and defense of another, and accidental killing, the charge of the court should have properly submitted these issues.

6.—Same—Standpoint of Defendant—Charge of Court—Self-Defense.

The court, in his charge on self-defense should submit the same from the standpoint of defendant.

Appeal from the District Court of Harrison.    Tried below before the Hon. H. T. Lyttleton.

Appeal from a conviction of manslaughter; penalty, five years imprisonment in the penitentiary.

The opinion states the case.

*Beard & Davidson,* for appellant.—On question of the court's charge on murder in the second degree: Vestol v. State, 3 Texas Crim. App., 648; Grisham v. State, 19 id., 504; Shoemaker v. State, 58 Texas Crim. Rep., 518, 126 S. W. Rep., 886; Corbett v. State, 63 Texas Crim. Rep., 478, 140 S. W. Rep., 342; Ogle v. State, 63 S. W. Rep., 1009; Ex parte Davis, 89 S. W. Rep., 978.

On question of the court's charge on manslaughter: Salmon v. State, 154 S. W. Rep., 1023.

*C. E. Lane,* Assistant Attorney-General, and *R. A. Hall,* County Attorney, for the State.—Cited cases in opinion.

DAVIDSON, JUDGE.—This conviction was for manslaughter with the maximum punishment of five years in the penitentiary.

1. The indictment is in the ordinary form, charging murder with malice aforethought. Appellant filed what he terms a plea of former jeopardy in this, to wit: That on 26th day of June, 1912, this defendant, under indictment fully presented, was arraigned in this court upon a charge of murder and was, by judgment of this court, upon a verdict of a jury duly returned, acquitted of murder in the first degree, and also acquitted of murder in the second degree, and was found guilty of manslaughter and a sentence of three years imposed, and the defendant here presents the said indictment, together with the verdict of the jury and judgment of the court rendered upon said trial, and makes the same a part of this motion, and prays the court that he be discharged as to murder in the first and second degree. This is only signed by his attorneys. The indictment, verdict and judgment are not set out in the plea nor attached to it. This is the only plea setting up the question of jeopardy found in the record. There is a bill of exceptions showing that when this motion was called and upon hearing evidence the motion was overruled and he was placed upon his trial upon an indictment charging murder in the first degree for the killing of Jordan Sanders on 17th day of February, 1912, which was the same offense for which he had heretofore been tried. The court approving this bill qualified it as follows: "That the indictment first returned against this defendant was returned by an illegally drawn grand jury and was considered void. The said grand jury that indicted this defendant the first time was drawn by the jury commissioners selected at the November term of the District Court, 1911; said jury commissioners drew grand and petit juries for the January, March and May terms of the District Court, 1912. This defendant was first indicted by the grand jury drawn for the January term, 1912."

Appellant contends there was error in not sustaining his plea. Under

the authorities the plea was not sufficiently pleaded. It is unnecessary to repeat the plea as it has heretofore been set out. See Willson's Ann. Code of Criminal Procedure, sec. 19, and for collated authorities subdivision 1 of said paragraph. But inasmuch as the case has to be reversed upon other questions, this matter is mentioned so the trouble may not arise upon another trial. It may be from the statement of the judge in his qualification that this court was in error in reversing and dismissing the prosecution on the former appeal for want of sufficient indictment. That case went off under the doctrine laid down in Willie v. State, referred to in the decision on former appeal of this case, or what is alleged to be the former appeal. Without going into the merits of that question as to whether the court was in error, this much will be stated: If the indictment before was a valid indictment, then appellant could not be tried upon this indictment for any higher offense than manslaughter. If it was not a valid indictment, but was void, then the court was not in error in submitting murder in the second degree for the decision of the jury. While there may be some question as to whether the indictment was void, yet upon another trial to avoid all these matters the court should not submit any higher grade of homicide than manslaughter. The writer believes, while he wrote the former opinion reversing and dismissing, that opinion may have been erroneous, although it is not altogether free from doubt. So upon another trial the court will not submit any higher degree of culpable homicide than manslaughter. We say this in view of another trial, although we do not think the question was sufficiently raised to require discussion by appellant's plea of former jeopardy.

2. The evidence suggests that the court was justified in submitting the issue of manslaughter from the State's viewpoint. From the evidence there was suggested self-defense, negligent homicide and accidental shooting. The State's theory was that, at a crap game the brother of appellant and Rufus Haggerty got into a war of words, in which Haggerty used the first insulting epithets, which were responded to by the brother of defendant in the same spirit, and that there were knives drawn by the two parties, some of the evidence indicating that appellant's brother was in the wrong in drawing his knife and requiring Haggerty to recant or take back some of the things he had said of a vulgar and obscene character. There is also evidence by the State suggesting when appellant came upon the scene and saw the difficulty as it was, that he suggested to his brother to make Haggerty recant or take back what he said, using indecent language tending to reflect on his mother, and that while in this condition he shot at Haggerty, killing Sanders. Without going further into the details, the evidence did not suggest a higher culpability than manslaughter. The defendant's theory was that Haggerty was in the wrong from the beginning, witnessed by himself, and was making an assault upon his brother with a knife when he interfered; that he had his pistol in his hand and it went off; that he did not shoot at Haggerty, and did not see

Sanders, the party who was shot; that he did not know why the pistol went off, but it was in the excitement at the time, and that he was very much excited and nervous, and the pistol fired accidentally. The court charged the jury, in a general way, with reference to manslaughter, without specifying any fact, but gave a general charge that any circumstance or combination of circumstances which produced sudden passion might be sufficient adequate cause for the jury to find manslaughter. Applying the law to the case directly the court gave the following charge:

"If you believe from the evidence, etc., that the defendant with a deadly weapon, in a sudden passion arising from an adequate cause, as the same has been hereinbefore explained, and not in defense of his brother against an unlawful attack producing a reasonable expectation or fear of death or serious bodily injury, did, in the County of Harrison and State of Texas, on or about the 17th day of February, 1912, as alleged in the indictment shoot with a pistol and thereby kill Jordan Sanders, the deceased," etc. The court then states the punishment to be not less than two nor more than five years in the penitentiary.

Exception is reserved to this charge because it limited the question of manslaughter to the defense of his brother against an unlawful attack producing a reasonable expectation or fear of death or serious bodily injury, whereas the issue of accidental shooting was in the case, made an issue by the facts, and the jury should have been instructed in this connection that if the killing was accidental that he would not be guilty of manslaughter. He contends, and we think correctly, that he had as much right, legally speaking, to this limitation of manslaughter as he did as to the limitation of self-defense. The testimony raised both questions, and it may also be suggested that under the facts we are of the opinion that negligent homicide was in the case, and this limitation should also have been included.

It is unnecessary to treat further the testimony in this connection, but under the facts stated we are of the opinion that negligent homicide was in the case. If appellant was in the wrong, in the trouble between his brother and Haggerty, when he interfered in it, and the interference placed him under the facts culpable under the law, then in that condition if his pistol was fired accidentally he was doing an unlawful act and not intending to kill, there would be negligent homicide in the case.

Another criticism of the failure of the court to submit manslaughter properly is raised in this: that if defendant shot at Rufus Haggerty in transport of passion and not in defense of his brother, and accidentally killed Sanders, the issue of manslaughter ought to be presented to the jury from that standpoint. If he shot at Haggerty under a sudden transport of passion produced by adequate cause and missing him killed Sanders, it could be no higher grade of homicide for killing Sanders than it would have been for killing Haggerty, had the killing occurred under the facts of this case, and from this standpoint this homicide could have been of no higher degree than manslaughter. Upon another

trial we are of opinion this phase of the law should be given. If the law had been correctly applied to manslaughter the verdict might have been less than five years.

There is some criticism of the charge to the effect that the jury was confined too much to their view of the case and as they saw it from the facts before them, and too little with reference to viewing the case from the standpoint of the defendant as he saw it. Without going into a discussion of that matter any further than stated, upon another trial the court should guard this view of the law and charge the law from the standpoint of the defendant.

The judgment is reversed and the cause is remanded.

*Reversed and remanded.*