Joyce Lee Lewis GARRETT, Appellant,

v.

The STATE of Texas, Appellee.

No. 04–81–00049–CR.

Court of Appeals of Texas, San Antonio.

Dec. 2, 1981.

Stephen E. Van Gaasbeck, San Antonio, for appellant.

Bill White, Dist. Atty., San Antonio, for appellee.

## OPINION

Before ESQUIVEL, BUTTS and CANTU, JJ.

CANTU, Justice.

Appellant was convicted by a jury of murder and the trial court assessed punishment at thirty-five (35) years' confinement in the Texas Department of Corrections. We reverse.

Without challenging the sufficiency of the evidence appellant complains in three separate grounds of error of jury misconduct and trial court error related to the alleged misconduct.

In view of the disposition made by this court, no necessity exists to address appellant's assigned errors since upon retrial the misconduct complained of will not likely recur. A summary of the facts surrounding the case is, nevertheless, necessary.

On the evening of September 22, 1977, in Carrizo Springs, Dimmit County, Texas, Ross Bennett and his family were enjoying a barbeque outside their trailer home located in the Yucca Trailer Park. Bennett's neighbor, Bill Rankin, and appellant, both of whom lived in the trailer park, were also present. Rankin, Bennett and appellant had been drinking immediately prior to the shooting.

Bennett's teenaged daughter, Sara Gail, testified that appellant drove up to their house trailer and asked if she could get out of her car to talk. Sara noticed a rifle in appellant's car at the time that appellant got out to join the others at the table. According to Sara, appellant remarked that she planned to shoot Rankin because of some prior difficulty involving the shooting of her dog by Rankin. When appellant got to the table, Sara and her mother, the deceased, went inside the house trailer, leaving appellant, Bennett and Rankin alone. While inside the trailer, Sara heard appellant and Rankin arguing and cursing about the shooting of appellant's dog. Sara went to the trailer door and saw appellant heading towards her car. She then saw appellant pick up the rifle that was in the car, place it over the trunk of the car and point it at the house trailer. A shot rang out and Mrs. Bennett was shot and killed while inside the trailer. There had been no animosity between appellant and the deceased, and

no contention is made that appellant intended to shoot Mrs. Bennett.

Appellant's version of the story is noticeably different. She testified that as she was driving by the Bennett trailer she was stopped by Sara who told her that Mrs. Bennett wanted to meet her. According to appellant, she got out of her car and went to meet the Bennett family. While there, Rankin came over from his trailer located nearby. Rankin appeared to be intoxicated and while still drinking told appellant that he had killed her dog and intended to kill another one. An argument ensued and a struggle between appellant and Rankin resulted in Rankin striking appellant and pulling a handful of her hair. Appellant, rather than argue, decided to leave with Rankin following behind her. When they got to her car, Rankin reached in and grabbed appellant's rifle by the barrel. Appellant objected to Rankin's taking her rifle. A struggle ensued, resulting in the rifle going off, and the bullet striking the house trailer and Mrs. Bennett inside. On rebuttal, the State called Mr. Bennett, who added nothing except that he could not determine at whom appellant was shooting.

Rankin, on rebuttal, denied struggling with appellant and touching appellant or her rifle. He did admit to arguing with appellant. He stated that he heard a shot while walking away from appellant's car. No one testified that appellant ever pointed the rifle at any person at the scene.

■ Appellant explained that the rifle was in her car because she was removing it from her trailer to prevent her husband from handling it. She did this because on the previous night, her husband, while drinking, had accidently discharged it inside their trailer. She wanted to avoid further problems with it. We think the evidence sufficiently raised the issues requiring a jury charge on voluntary manslaughter and involuntary manslaughter.

■ Although no charge on accident was requested or given, we think the evidence sufficiently raises the defense. Upon retrial, such a charge, if raised by the evi-

dence and requested, should be given. *Simpkins v. State*, 590 S.W.2d 129 (Tex.Cr. App.1979); *Dockery v. State*, 542 S.W.2d 644 (Tex.Cr.App.1975).

Appellant was indicted for murder under Tex.Penal Code § 19.02(a)(1) which reads as follows:

§ 19.02 Murder

(a) A person commits an offense if he:

(1) intentionally or knowingly causes the death of an individual . . . .

The indictment, with the formal parts omitted, alleged ". . . Joyce Lee Lewis Garrett did then and there knowingly cause the death of an individual Betty Lynn Bennett, by shooting her with a gun, . . . ."

The State's theory of the case was based upon the provisions of Tex.Penal Code § 6.04 for conviction and the trial court's instructions to the jury recited, in addition to an application of § 19.02(a)(1), the following instruction: "A person is nevertheless criminally responsible for causing a result if the only difference between what actually occurred and what she desired, contemplated, or risked is that a different person was injured, harmed, or otherwise affected."

The instruction is taken directly from § 6.04 Tex.Penal Code which provides:

§ 6.04 Causation: Conduct and Results

* * * * * *

(b) A person is nevertheless criminally responsible for causing a result if the only difference between what actually occurred and what he desired, contemplated, or risked is that:

* * * * * *

(2) a different person or property was injured, harmed, or otherwise affected.

The trial court additionally charged on the law of voluntary manslaughter and attempted to charge on involuntary manslaughter.

■ We begin with the premise that a conviction for murder under an indictment alleging a violation of § 19.02(a)(1) Tex.Penal Code may be had upon a proper application of § 6.04(b)(2) to the facts of the case. *Williams v. State*, 567 S.W.2d 507 (Tex.Cr. App.1978); *McNeal v. State*, 600 S.W.2d 807 (Tex.Cr.App.1980).

■ Further, if the facts raise an issue that the accused was acting "under the immediate influence of a sudden passion arising from an adequate cause" at the time of the homicide, a charge on voluntary manslaughter is called for. *Humphries v. State*, 615 S.W.2d 737 (Tex.Cr.App.1981); *Medlock v. State*, 591 S.W.2d 485 (Tex.Cr.App.1979); *Roberts v. State*, 590 S.W.2d 498 (Tex.Cr. App.1979); *Braudrick v. State*, 572 S.W.2d 709 (Tex.Cr.App.1978).

■ If the theory of the State, however, requires an application of § 6.04(b)(2) to prove murder under § 19.02(a)(1), and voluntary manslaughter is raised by the evidence so as to require a charge on that lesser included offense, an application of § 6.04(b)(2) must be made to voluntary manslaughter in applying the law to the facts. This is so because the intent is the essence of the crime, and when the act intended and the act resulting from it are precisely the same, whether the fatal shot takes effect upon the party for whom it was aimed or on someone else, the guilt should be the same. *Honea v. State*, 585 S.W.2d 681 (Tex.Cr.App.1979); *Williams v. State*, 567 S.W.2d 507 (Tex.Cr.App.1978).

An examination of the predecessor statutes, Articles 42 through 44, Penal Code 1925 [1] reflects similar application. *See*

---

1. Art. 42 Act done by mistake a felony—

One intending to commit a felony and who in the act of preparing for or executing the same shall through mistake or accident do another act which if voluntarily done, would be a felony, shall receive the punishment affixed to the felony actually committed.

Art. 43 Act done by mistake a misdemeanor—

One intending to commit a felony and who in the act or preparing for or executing the same shall through mistake or accident to another act which, if voluntarily done would be a misdemeanor, shall receive the highest punishment affixed to such misdemeanor.

Art. 44 Felony done by mistake—

One intending to commit a misdemeanor and who is in the act of preparing for or executing

*Richard v. State,* 426 S.W.2d 951 (Tex.Cr. App.1967); *Mosley v. State,* 172 Tex.Cr.R. 117, 354 S.W.2d 391 (1962); *Covert v. State,* 134 Tex.Cr.R. 12, 113 S.W.2d 556 (1938); *See also* prior application in *Whiten v. State,* 71 Tex.Cr.R. 555, 160 S.W. 462 (1913); *McCullough v. State,* 62 Tex.Cr.R. 126, 136 S.W. 1055 (1911); *Clark v. State,* 19 Tex. App. 495 (1885). In the instant case, the paragraph in the jury charge addressing the offense of murder under § 19.02(a)(1) contained a definition of transferred intent under § 6.04(b)(2) but failed totally to apply it to the facts of the case.

 The paragraph in the jury charge addressing voluntary manslaughter did not even contain reference to § 6.04(b)(2), either by definition, by application or otherwise, but merely permitted the jury to consider the lesser included offense without consideration of the State's theory of the homicide based upon a transferred intent. Since the State's case relied upon the provisions of § 6.04 for a conviction, it necessarily follows that a conviction resting upon the theory of transferred intent must be applied to each lesser included offense [2] in the charge to the jury for a fair application of the law to the facts.

The record reflects no evidence of a knowing killing of deceased. If a conviction for murder were to be sustainable on these facts, it could only be by virtue of § 6.04 operating to transfer the focus of what appellant "desired, contemplated or risked," from whomever her intended victim was to the actual victim, Mrs. Bennett.

 It follows that the trial court should have applied § 6.04(b)(2) to its charge on both murder and voluntary manslaughter. In the absence of such application and by

singling out only the charge on murder to include by definition transferred intent, the charge amounted to a comment upon the evidence such as prohibited under art. 36.14 Tex.Code Crim.Pro.Ann. Since only the charge on murder contained reference to § 6.04(b)(2), albeit without application, and because the State's theory relied upon transferred intent, the jury was necessarily advised that a conviction could be had only for murder as charged in the initial paragraph.

But the error in the jury charge does not stop there. The paragraph purporting to charge on the law of involuntary manslaughter does so only in name. The infirmity in the instruction purporting to charge on the law of involuntary manslaughter is obvious, as reflected by the language in the charge, to wit:

> Now bearing in mind the foregoing instructions, if you believe from the evidence beyond a reasonable doubt that the defendant Joyce Lee Lewis Garrett, on or about the 22nd day of September, 1977—, in the County of Dimmit and State of Texas, as alleged in the indictment, did then and there knowingly cause the death of an individual, Betty Lynn Bennett, to wit: by shooting her with a gun, . . . you will find the defendant guilty of the offense of involuntary manslaughter and so say by your verdict, but if you do not so believe, or if you have a reasonable doubt thereof, you will acquit the defendant and say by your verdict "Not Guilty."

The trial court correctly defined involuntary manslaughter as the reckless causing of an individual's death and correctly defined criminal culpability under Tex.Penal Code, § 6.03(c).[3] However, the trial

---

the same shall through mistake commit a felony shall receive the lowest punishment affixed to the felony.

**2.** It would appear that a charge on involuntary manslaughter does not require an application of § 6.04(b)(2) because the gist of the offense in involuntary manslaughter is reckless conduct and not a knowing or intentional act. There is no intent to be transferred.

**3.** Tex.Penal Code § 6.03(c) provides:

"A person acts recklessly, or is reckless, with respect to circumstances surrounding his conduct or the result of his conduct when he is aware of but consciously disregards a substantial and unjustifiable risk that the circumstances exist or the result will occur. The risk must be of such a nature and degree that its disregard constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances as viewed from the actor's standpoint."

court again charged on the law of murder under § 19.02(a)(1), disguised as a charge on involuntary manslaughter.

■ At the outset we must determine whether this error constitutes fundamental error reviewable by the court *sua sponte* in the absence of an objection or assignment as error on appeal. Error in the trial court's charge not objected to or the subject of a requested charge is generally considered waived and not reviewable on appeal. Articles 36.14, 36.15, Tex.Code Crim. Pro.Ann. *Simon v. State*, 488 S.W.2d 439 (Tex.Cr.App.1972); *White v. State*, 495 S.W.2d 903 (Tex.Cr.App.1973). However, this court is not precluded from reviewing error in the court's charge because of failure to comply with the provisions of Tex. Code Crim.Pro.Ann. art. 36.14 and 36.15 in all cases. *See* Tex.Code Crim.Pro.Ann. art. 36.19.[4] This is particularly true where the total failure of the court's charge to apply the law to the facts of the case infringes upon an accused's federal and state constitutional rights to due process and trial by jury. *Ex parte Clark*, 597 S.W.2d 760 (Tex. Cr.App.1979); *Williams v. State*, 547 S.W.2d 18 (Tex.Cr.App.1977).

■ Likewise, where the error appearing from the record was calculated to injure the rights of the defendant or where it appears from the record that the defendant has not had a fair and impartial trial, this court is empowered to review and reverse a case *sua sponte* as fundamental error. Tex.Code Crim.Pro.Ann. art. 36.19. *Williams v. State, supra; Perez v. State,* 537 S.W.2d 455 (Tex.Cr.App.1976); *Harris v. State,* 522 S.W.2d 199 (Tex.Cr.App.1975); *Fennell v. State,* 424 S.W.2d 631 (Tex.Cr. App.1968). *See also Rutherford v. State,* 15 Tex.App. 236 (1883); *Cf. Garza v. State,* 162 Tex.Cr.R. 655, 288 S.W.2d 785 (1956). The failure of the charge to apply the law to the facts is fundamental error that is not waived by the failure to object at trial. *Perez v. State, supra; Harris v. State, supra.* In fact, a failure to apply the law to

the facts in the jury charge may be assailed for the first time in a habeas corpus proceeding. *Ex parte Clark, supra.*

In *Ex parte Clark,* the court held:

... the total failure of the court's charge to apply the law to the facts infringes two areas of the state and federal constitutions. First, it "goes to the very basis of the cases" and denies "the fair and impartial trial to which [defendants] are entitled under the federal and state Constitutions"; that is, under the due process provisions of the Fourteenth Amendment to the United States Constitution and the due course of law provision in Article 1, Section 19, of the Texas Constitution. *Harris v. State,* 522 S.W.2d 199, 202 (Tex. Cr.App.1975). Second, the failure of the charge to apply the law to the facts "impairs the right to trial by jury and, therefore, by definition, is 'calculated to injure the rights of defendant,' [V.A.C.C.P., Article 36.19] to a trial by jury," which rights are guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution and article 1, section 10, of the Texas Constitution. *Williams v. State,* 547 S.W.2d 18, 20 (Tex.Cr.App. 1977).

597 S.W.2d, at 761.

In *Williams v. State,* the court, speaking through Judge Odom, stated:

The law must come from the court, the facts must be decided by the jury, and the charge to instruct the jury properly, must apply the law to the facts raised by the evidence. It is not sufficient for the jury to receive an abstract instruction on the law and then to render a verdict according to a general conclusion on whether the law has been violated. The State must prove its case beyond a reasonable doubt and must prove each element of the offense charged. This is the very basis of the case. The prosecutor as advocate for the State's position may emphasize some elements in his argument and defense counsel as advocate for the accused may emphasize others in his ar-

4. Tex.Code Crim.Pro.Ann. art. 36.19 provides:
"... [t]he judgment shall not be reversed unless the error appearing from the record was

calculated to injure the rights of defendant, or unless it appears from the record that the defendant has not had a fair and impartial trial."

gument, but the court is the only neutral source to which the jury may look for an unbiased application of the law to the facts of the case. An abstract charge does not inform the jury of what facts, if found by it, would constitute proof of the elements of the offense.

\* \* \* \* \* \*

To allow the jury to receive an application of the law to the facts only from the partisan advocates without a neutral and unbiased instruction on that matter in the charge is to risk the degeneration of trial by jury to a debating contest, where the persuasiveness of competing applications of the law to the facts determines guilt or innocence. There should be but one controlling application of the law to the facts, and that application should come from the court. Its absence impairs the right to trial by jury and, therefore, by definition, is calculated to injure the rights of defendant, (art. 36.19, *supra*) to a trial by jury.

547 S.W.2d, at 20.

■ Fundamental error is presented where error in the charge goes to the very basis of the case so that the charge fails to state and apply the law under which the accused is prosecuted. *Fennell v. State, supra; Johnson v. State*, 99 Tex.Cr.R. 25, 267 S.W. 713 (1925); *Ross v. State*, 487 S.W.2d 744 (Tex.Cr.App.1972); *Harris v. State, supra.*

■ Error in the instant charge goes to the very basis of the case. The charge fails to apply the law of murder and manslaughter (as qualified by the causation factor in § 6.04(b)(2)) to the evidence and the jury was not instructed under what circumstances they should convict, or under what circumstances they should acquit.

Finding fundamental reversible error in the court's charge to the jury, we reverse the judgment and remand the cause.