Joyce Lee Lewis GARRETT, Appellant,

v.

The STATE of Texas, Appellee.

No. 04–81–00049–CR.

Court of Appeals of Texas,
San Antonio.

May 18, 1983.

Discretionary Review Granted
Sept. 21, 1983.

Stephen E. Van Gaasbeck, Lytle & Van Gaasbeck, David Chapman, San Antonio, for appellant.

Charles R. Borchers, Laredo, for appellee.

Before ESQUIVEL, BUTTS and CANTU, JJ.

OPINION

CANTU, Justice.

Appellant's conviction for murder was originally set aside by this court in *Garrett v. State,* 624 S.W.2d 953 (Tex.App.—San Antonio 1981). The Court of Criminal Appeals granted the State's Petition for Discretionary Review (*Garrett v. State,* 642 S.W.2d 779 (Tex.Cr.App.1982)), reversed this court's judgment and remanded for this court's consideration of appellant's other

grounds of error not previously touched by our original opinion.

We originally reversed on unassigned error that we deemed fundamental in nature. In setting aside our judgment, the Court of Criminal Appeals has presented us with guidelines that we shall adhere to in making our present disposition.

Appellant's original appeal presented three grounds of error including alleged instances of jury misconduct and of trial court error related to the alleged misconduct. The sufficiency of the evidence was not challenged on original submission.

We note that appellant sought to challenge the sufficiency of the evidence for the first time by motion for leave to file appellant's motion for rehearing in the Court of Criminal Appeals following the granting of the State's Petition for Discretionary Review. That court declined to permit leave to file the motion for rehearing and appellant's challenge to the sufficiency of the evidence was not reached.

Following remand to this court, appellant has filed a supplemental brief [1] in this court in which she once again challenges the sufficiency of the evidence urging the identical argument she sought to present to the Court of Criminal Appeals.

Our initial inquiry must focus on the propriety of this court to consider such a challenge raised for the first time after reversal and remand to this court. We begin with the observation that the Court of Criminal Appeals did not rule on this challenge, but seems to have deferred the ruling to this court.

Appellant points out that the issue of insufficiency of the evidence did not develop until both appellate opinions were delivered. This contention in no small measure is true. In our original opinion we observed that the State's theory depended upon an application of the law of transferred intent to the facts in order to sustain a conviction for murder. The Court of Criminal Appeals' opinion, however, implicitly held that the jury must have found appellant guilty

of murder without benefit of the transferred intent application. Appellant's challenge to the sufficiency of the evidence to support a conviction for murder without the aid of the transferred intent application did not become viable until both appellate opinions were handed down.

■ Under the rules for briefing in the Courts of Appeals, an appellant may file an amended brief raising additional contentions either prior to or after submission where the cause of justice would be effectuated. See TEX.R.CIV.P. 431; *Stuart v. Coldwell Banker & Co.*, 552 S.W.2d 904 (Tex.Civ.App.—Houston [1st Dist.] 1977, writ ref'd n.r.e.).

■ Upon reversal and remand we consider the cause to be once again submitted for our disposition. We find nothing in the Code of Criminal Procedure prohibiting the filing of amended briefs following reversal and remand from the Court of Criminal Appeals. See TEX.CODE CRIM.PROC. ANN. art. 44.33(a) (permitting the filing of supplemental briefs prior to submission).

TEX.CODE CRIM.PROC.ANN. art. 44.33 (Rule 211 Courts of Appeal) (Vernon 1981) provides:

> Where not inconsistent with the Code of Criminal Procedure and these rules, as they now exist or may hereafter exist, the Rules of Civil Procedure shall govern proceedings in the Courts of Appeals in criminal cases.

We find no inconsistency between TEX. R.CIV.P. 431 and the Code of Criminal Procedure, including the rules of the Courts of Appeals. Accordingly, we hold that appellant's brief filed in this court following reversal and remand challenging the sufficiency of the evidence is timely filed and should be considered in order that the cause of justice be effectuated.

■ In so holding, we are likewise cognizant of the fact that a challenge to the sufficiency of the evidence to support a conviction is now considered a claim central to the basic question of guilt or innocence

---

1. While titled "supplemental brief" the brief is in reality an amended brief.

and, therefore, of constitutional dimension. *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). The United States Supreme Court has repeatedly recognized that a conviction upon a charge not made or upon a charge not tried constitutes a denial of due process. *Jackson v. Virginia, supra; Presnell v. Georgia,* 439 U.S. 14, 99 S.Ct. 235, 58 L.Ed.2d 207 (1978); *Cole v. Arkansas,* 333 U.S. 196, 68 S.Ct. 514, 92 L.Ed. 644 (1948).

The sufficiency of the evidence to support a conviction may now be challenged by federal habeas corpus even where a state challenge has been previously made, *Jackson v. Virginia, supra,* because a conviction resting upon evidence deemed insufficient to have established guilt beyond a reasonable doubt violates the principles of constitutional due process. *Jackson v. Virginia, supra.* Due process violations have traditionally been reviewed by the Court of Criminal Appeals when raised for the first time by post-conviction Habeas Corpus. *See Ex parte Hagans,* 558 S.W.2d 457 (Tex.Cr.App.1977); *Ex parte Garcia,* 547 S.W.2d 271 (Tex.Cr.App.1977); *Ex parte Turner,* 545 S.W.2d 470 (Tex.Cr.App.1977); *Ex parte Herrin,* 537 S.W.2d 33 (Tex.Cr.App.1976); or even when raised by the appellate court *sua sponte, Lechuga v. State,* 532 S.W.2d 581 (Tex.Cr.App.1976); *Bingham v. State,* 523 S.W.2d 948 (Tex.Cr.App.1975); *cf. Scott v. State,* 534 S.W.2d 711 (Tex.Cr.App.1976) (late filing of appellant's briefs did not prevent review in the interest of justice).

At least once the Court of Criminal Appeals has noted that the sufficiency of the evidence is inquired into upon appeal in every case. *In re: Lyles,* 168 Tex.Cr. 145, 323 S.W.2d 950 (1959).

We are also aware that the Court of Criminal Appeals has considered a challenge to the sufficiency of the evidence in connection with double jeopardy claims raised by post-conviction habeas corpus proceedings. *See* art. 11.07, TEX.CODE CRIM. PROC.ANN.; *Ex parte: Colunga,* 587 S.W.2d 426 (Tex.Cr.App.1979). The same court has had occasion to review the sufficiency of the evidence as unassigned error in the interest of justice. *Benjamin v. State,* 621 S.W.2d 617 (Tex.Cr.App.1981).

We construe the foregoing cases as additional authority for this court to consider appellant's challenge to the sufficiency of the evidence.

In our original opinion we summarized the facts of the case because we deemed it appropriate for the sake of clarity in addressing the question of the application of the law to the facts of the case as contained in the trial court's charge. We herein repeat the facts previously summarized.

On the evening of September 22, 1977, in Carrizo Springs, Dimmit County, Texas, Ross Bennett and his family were enjoying a barbeque outside their trailer home located in the Yucca Trailer Park. Bennett's neighbor, Bill Rankin, and appellant, both of whom lived in the trailer park, were also present. Rankin, Bennett and appellant had been drinking immediately prior to the shooting.

Bennett's teenaged daughter, Sara Gail, testified that appellant drove up to their house trailer and asked if she could get out of her car to talk. Sara noticed a rifle in appellant's car at the time that appellant got out to join the others at the table. According to Sara, appellant remarked that she planned to shoot Rankin because of some prior difficulty involving the shooting of her dog by Rankin. When appellant got to the table, Sara and her mother, the deceased, went inside the house trailer, leaving appellant, Bennett and Rankin alone. While inside the trailer, Sara heard appellant and Rankin arguing and cursing about the shooting of appellant's dog. Sara went to the trailer door and saw appellant heading towards her car. She then saw appellant pick up the rifle that was in the car, place it over the trunk of the car and point it at the house trailer. A shot rang out and Mrs. Bennett was shot and killed while inside the trailer. There had been no animosity between appellant and the deceased, and no contention is made that appellant intended to shoot Mrs. Bennett.

Appellant's version of the story is noticeably different. She testified that as she

was driving by the Bennett trailer she was stopped by Sara who told her that Mrs. Bennett wanted to meet her. According to appellant, she got out of her car and went to meet the Bennett family. While there, Rankin came over from his trailer located nearby. Rankin appeared to be intoxicated and while still drinking told appellant that he had killed her dog and intended to kill another one. An argument ensued and a struggle between appellant and Rankin resulted in Rankin striking appellant and pulling a handful of her hair. Appellant, rather than argue, decided to leave with Rankin following behind her. When they got to her car, Rankin reached in and grabbed appellant's rifle by the barrel. Appellant objected to Rankin's taking her rifle. A struggle ensued, resulting in the rifle going off, and the bullet striking the house trailer and Mrs. Bennett inside. On rebuttal, the State called Mr. Bennett, who added nothing except that he could not determine at whom appellant was shooting.

Rankin, on rebuttal, denied struggling with appellant and touching appellant or her rifle. He did admit to arguing with appellant. He stated that he heard a shot while walking away from appellant's car. No one testified that appellant ever pointed the rifle at any person at the scene.

Appellant testified that the rifle was in her car because she was removing it from her trailer to prevent her husband from handling it. She did this because on the previous night, her husband, while drinking, had accidently discharged it inside their trailer. She wanted to avoid further problems with it.

In our original opinion we recognized that the record did not reflect any evidence of a knowing killing of the deceased. The Court of Criminal Appeals likewise recognized in its opinion that there had been no animosity between appellant and the deceased, and that no allegation was made that appellant intended to shoot the deceased.

We erroneously concluded that a conviction based upon the theory of transferred intent under § 6.04(b)(2) and murder under § 19.02(a)(1) could not stand in the absence of an application of the State's theory under § 6.04(b)(2).

We are now instructed by the Court of Criminal Appeals that a proper charge under the facts of this case *should* correctly apply § 6.04(b)(2) but that failure to do so in the absence of objection does not present fundamental error requiring reversal.

Of more instructive value is the statement by Judge Davis that appellant's conviction for murder rests upon the state's discharge of the greater burden of proving a "knowing" act under section 6.03(b), TEX. PENAL CODE. Thus the sufficiency of the evidence to sustain appellant's conviction must be measured by proof finding support under § 19.02(a)(1) and § 6.03(b).

A charge on transferred intent is by its nature favorable to the State and detrimental to the defendant. If we assume, as did the Court of Criminal Appeals, that appellant quite possibly intentionally failed to object to a jury charge which omitted a proper application of transferred intent in order to require the State to meet the greater burden, then it follows that we must likewise assume that the State accepted the greater burden and relied upon the greater burden to obtain the conviction.

In our original opinion we stated, "If a conviction for murder were to be sustainable on these facts, it could only be by virtue of § 6.04 operating to transfer the focus of what appellant 'desired, contemplated or risked,' from whomever her intended victim was to the actual victim, Mrs. Bennett." We remain convinced of the correctness of this statement, however, under the guidelines laid down by the Court of Criminal Appeals we must now find evidence supporting a "knowing" killing.

Section 6.03(b) provides:

A person acts knowingly, or with knowledge, with respect to the nature of his conduct or to circumstances surrounding his conduct when he is aware of the nature of his conduct or that the circumstances exist. A person acts knowingly, or with knowledge, with respect to a re-

sult of his conduct when he is aware that his conduct is reasonably certain to cause the result.

We are justified in affirming appellant's conviction for murder only if the evidence viewed in the light most favorable to the jury verdict shows that appellant was aware of the nature of her conduct or that the circumstances existed and that she was aware that her conduct would with reasonable certainty cause the actual result rather than the desired result. Section 6.03(b), TEX.PENAL CODE; *Garrett v. State,* 642 S.W.2d at 781; *See also Practice Commentary,* § 6.03 p. 89. We recognize that proof of a culpable mental state generally relies on circumstantial evidence. *Dillon v. State,* 574 S.W.2d 92 (Tex.Cr.App.1978) (en banc). Nevertheless, the record is devoid of any evidence that appellant was aware of the nature of her conduct or that the circumstances existed, or that she was aware that her conduct would with reasonable certainty cause the death of the deceased. There is no evidence that appellant *knew* at the time the rifle discharged that she was about to cause the death of the deceased. Indeed, the State never so contended. Nor did the State make any effort to prove such a theory.

In reviewing the sufficiency of the evidence to support a conviction where the theory of conviction has now been clearly delineated for us, we are bound to measure the evidence presented against the charge, which charge must conform to the allegations in the indictment. It follows that if the evidence does not conform to the charge, it is insufficient as a matter of law to support the only guilty verdict authorized. *Benson v. State,* No. 60,130, delivered May 12, 1982 (Tex.Cr.App.—not yet reported).

The only guilty verdict authorized under the guidelines given us is one for murder under section 19.02(a)(1) and section 6.03, TEX.PENAL CODE. In view of the evidence adduced the only permissible verdict was one of "not guilty".

The State, although served with a copy of appellant's "Supplemental Brief" challeng-ing the sufficiency of the evidence has not responded. We do, however, have available to us the Petition for Discretionary Review filed by the State's Attorney which contains recitations anticipating a challenge to the sufficiency of the evidence. Although the State contends in the Petition that appellant knew that deceased was in the house trailer at the time the rifle discharged, we are not directed to any part of the statement of facts supporting such a contention.

During direct examination of appellant, she stated that insofar as she knew (at the time of trial) the deceased went inside her trailer prior to the shooting. This is far removed from saying that appellant saw deceased go into her trailer or that she knew at the time of the shooting that de-ceased was in her trailer.

■ The State further suggests that the conviction can be sustained by application of reasoning contained in various cases cited. We have examined these and find that without exception they are dependent upon a finding that the defendant possessed the requisite knowledge or the conviction is premised upon a theory not available in support of the instant jury verdict. *See Canedy v. State,* 507 S.W.2d 743 (Tex.Cr.App.1974) (evidence of knowledge that a person was in a car set afire); *Davis v. State,* 106 Tex.Cr. 300, 292 S.W. 220 (1927) (purposely and intentionally firing of a pistol at an auto *knowing at the time* that persons were occupants therein); *Salisbury v. State,* 90 Tex.Cr. 438, 235 S.W. 901 (1921) (wanton and reckless shooting into a car *known* to be occupied); *Banks v. State,* 85 Tex.Cr. 165, 211 S.W. 217 (1919) (deliberate shooting into a train with *full knowledge* that persons might be killed).

It therefore follows that the judgment of the trial court must be reversed. The cause is remanded with instructions to enter judgment of acquittal on murder. *Burks v. United States,* 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978); *Green v. Massey,* 437 U.S. 19, 98 S.Ct. 2151, 57 L.Ed.2d 15 (1978).

The State is not precluded from retrying appellant on a lesser included offense of

murder. *Rogers v. State,* 575 S.W.2d 555 (Tex.Cr.App.1979); *Ex parte Harris,* 600 S.W.2d 791 (Tex.Cr.App.1980) (on rehearing en banc); *Granger v. State,* 605 S.W.2d 602 (Tex.Cr.App.1980); *Taylor v. State,* 637 S.W.2d 929 (Tex.Cr.App.1982).

Although we have examined appellant's other grounds of error, we find it again unnecessary to inquire into their validity.

BUTTS, Justice, dissenting.

While I agreed with and joined in this court's original opinion at 624 S.W.2d 953, the turn now taken by the majority calls for my departure and, thus, my dissent.

The indictment in this case alleges that appellant "did then and there knowingly cause the death of [deceased] by shooting her with a gun...." Section 6.03(b) of the Texas Penal Code provides:

> A person acts knowingly, or with knowledge, with respect to the nature of his conduct or to circumstances surrounding his conduct when he is aware of the nature of his conduct or that the circumstances exist. A person acts knowingly, or with knowledge, with respect to a re-*sult of his conduct when he is aware that his conduct is reasonably certain to cause the result.*

The distinction to be drawn in determining if a homicide is criminal is not whether the act is intentional or unintentional, but whether the act is voluntary or involuntary. *Womble v. State,* 618 S.W.2d 59, 64 (Tex.Cr. App.1981). A person may act unintentionally and still commit a criminal offense, provided he acts with knowledge, recklessness or negligence. In order for the homicide to be punishable, the evidence must show that the defendant committed a voluntary act with the requisite culpable mental state. *Id.* and cases there cited.

The transferred intent doctrine, long known in criminal law, has been codified in Texas as TEX.PENAL CODE ANN. § 6.04 (b) (Vernon 1974):

> A person is nevertheless criminally responsible for causing a result if the only difference between what actually oc-

curred and what he desired, contemplated, or risked is that:

> \* \* \* \* \* \*
>
> (1) a different offense was committed; or
>
> (2) a different person or property was injured, harmed, or otherwise affected.

It was the abstract definition of § 6.04(b)(2) that the trial court gave to the jury in this case, and it is obvious from the evidence that the State relied upon this theory in its case. This it could properly do. *Williams v. State,* 567 S.W.2d 507, 509 (Tex.Cr.App. 1978).

Two witnesses, the husband and daughter of the deceased, testified that appellant went to her car, took out the rifle, braced it on the trunk of the car, and fired toward the trailer house. Another witness, Rankin, the one who quarreled with appellant, testified he had just been at appellant's car and had turned his back, intending to return to the Bennetts' trailer house when he heard the shot from the rifle.

The scene was a trailer park with trailers spaced a short distance apart. The appellant lived five trailers away from the Bennetts. Rankin lived "next door" to them. It is undisputed that Rankin and appellant argued. Appellant's version was that the gun went off as she and Rankin struggled over it; Rankin denied he touched her or the gun. There was evidence that the Bennetts had three children who lived with them in the trailer house. Further, there was evidence that the deceased, one daughter, and a son sat outside with the deceased's husband, Rankin, and appellant at a table, and that the mother and daughter later went inside. It was about 9:00 p.m. Appellant admitted the gun was in her car and that she knew it was loaded. She also said she knew what the gun salesman told her husband when he purchased it: that a bullet from that gun could go through a motor block.

Whether appellant saw the deceased actually go into the trailer house is not the point; that *someone* was in the house (family members) was highly probable. It would not be necessary that the appellant

actually *know* that it would be Mrs. Bennett who would receive the discharged bullet. The actual result was that someone inside the trailer was killed; this was a foreseeable consequence. Moreover, in a trailer park it would be within the realm of foreseeability that many persons' lives would be endangered by the act of shooting a high-powered rifle.

We are bound by the law to view the evidence in the light most favorable to the jury verdict. *Bowers v. Texas,* 570 S.W.2d 929, 932 (Tex.Cr.App.1978). Under the court's charge which included the definition of "knowingly or with knowledge," the jury could properly infer from the circumstances that appellant had the requisite culpable mental state. I would hold the evidence to be sufficient. For these reasons I dissent.