NO. 07-01-061-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL B

FEBRUARY 19, 2002
_____

ROY CASTILLO,

Appellant

v.

THE STATE OF TEXAS,

Appellee
_____

FROM THE 181ST DISTRICT COURT OF POTTER COUNTY;

NO. 40,537-B; HON. JOHN BOARD, PRESIDING
_____

Before Boyd, C.J., Quinn and Johnson, J.J.

Roy Castillo (appellant) was convicted by a jury of murder. Through seven issues, he alleges that 1) the jury charge was improper, 2) by omitting an instruction on transferred intent *viz* the lesser included offense of manslaughter, the trial court commented on the weight of the evidence, 3) the evidence was legally and factually insufficient, and 4) the trial court erred in admitting an autopsy report since it was hearsay. We affirm the judgment.

## *Background*

After being involved in a fight at a local pool hall and its adjacent parking lot, appellant and a friend drove to appellant's home to obtain firearms, namely a pistol-grip shotgun and a 9mm pistol. Then they returned, with the weapons, to the scene of the fight. Upon arriving at same, the two exited their vehicle and began shooting at a black car. Inside the car sat various people including Ambrose Bustos (Bustos), one of the participants in the earlier fight, and Julian Moreno (Moreno). The latter was struck in the head by a bullet and killed.

When appellant later discovered that someone had died as a result of the shooting, he threw the shotgun, the pistol, and its ammunition clip in T-Anchor Lake. In his confession to police, appellant admitted firing his pistol at the car and throwing the weapons in the lake. The weapons were later recovered from the lake.

The State indicted appellant for murdering Moreno. One of its theories at trial involved the concept of transferred intent. That is, the State attempted to show that though appellant and his friend intended to kill Bustos, they succeeded in murdering Moreno. When both litigants rested their respective cases, the court charged the jury. Included therein were paragraphs informing the jury that they could convict appellant for murder if they found he intentionally or knowingly caused the death of Moreno or if he intended to kill Bustos but actually killed Moreno. So too did it instruct the jury on the lesser included offense of manslaughter. The jury eventually found appellant guilty of murder.

***Issue One – Improper Jury Charge***

Appellant initially contends that the trial court's instruction concerning transferred intent was improper. This is allegedly so for three reasons. First, the theory was not mentioned in the indictment. Second, the trial court was obligated to inform the jury that it "must find that any actions taken by [him] to show transferred intent must be done knowingly and intentionally." And, third, while the instruction described the deadly weapon with which appellant intended to kill Bustos, it failed to describe the particular deadly weapon which resulted in Moreno's death. We overrule the contentions.

As to the need to plead transferred intent in the indictment as a prerequisite to mentioning it in the charge, we cite *Dowden v. State*, 758 S.W.2d 264 (Tex. Crim. App. 1988) and *In re K.W.G.*, 953 S.W.2d 483 (Tex. App.–Texarkana 1997, pet. denied). Each holds that the theory may be incorporated in the charge though omitted from the indictment. *Dowden v. State*, 758 S.W.2d at 274; *In re K.W.G.*, 953 S.W.2d at 488.

As to the remaining contentions, we feel the need to quote pertinent aspects of the indictment and charge. Through the former, the State accused appellant of "intentionally and knowingly caus[ing] the death of . . . Julian Moreno, by shooting the said . . . Moreno with a deadly weapon, . . . a firearm." Through the latter, *i.e.* the charge, the court informed the jury that:

> [1] [n]ow, if you find from the evidence beyond a reasonable doubt that on or about the 24th day of February, 1999, in Potter County, Texas, the Defendant, ROY CASTILLO, did then and there intentionally or knowingly cause the death of an individual, namely Julian Moreno, by shooting the said Julian Moreno with a deadly weapon, to-wit: a firearm, you will find the defendant guilty of murder. . . [;]

3

[2] [y]ou are further instructed that a person is criminally responsible for causing a result if the only difference between what actually occurred and what he desired, contemplated or risked is that a different person was injured harmed or otherwise affected. . .[; and]

[3] [n]ow bearing in mind the foregoing instructions, if you believe from the evidence beyond a reasonable doubt, that the defendant, ROY CASTILLO, on or about the 24th day of February, 1999, in the County of Potter and State of Texas, intending to cause the death of an individual, Ambrose Leon Bustos, by shooting the said Ambrose Leon Bustos with a deadly weapon, to-wit: a firearm, did then and there cause the death of an individual, namely, Julian Moreno, by shooting the said Julian Moreno with a deadly weapon, you will find the defendant guilty of the offense of murder and so say by your verdict.

With these provisions in mind, we turn to the arguments.

Regarding the supposed need to instruct the jury that the "acts taken by appellant to show transferred intent must be done knowingly or intentionally," we see two possible interpretations of the appellant's contention.[1] The first is that the court must inform the jury that it can convict only if the actions directed towards the individual whom appellant actually wanted to kill were taken with the requisite *mens rea*. Here, the trial court did just that. It informed the jurors that they could convict only if appellant caused the death of Moreno while "*intending* to cause the death of an individual, Ambrose Leon Bustos . . . ."[2] (Emphasis added).

The second interpretation of appellant's argument involves the supposed need to state that appellant acted with a particular *mens rea* towards Moreno as he caused the

---

[1]What appellant means when alluding to the "actions taken by Appellant to show transferred intent" is unclear. Thus, we are left to interpret the nature of his argument.

[2]By using the word "intending" in the application paragraph and mentioning no other *mens rea*, it could be said that the trial court enhanced the burden of the State or restricted the jury's ability to convict for murder. For instance, the omission denied the factfinder the opportunity to convict if appellant acted "knowingly." And, such a mind set is sufficient to secure a conviction for murder. TEX. PEN. CODE. ANN. §19.02(b)(1)(Vernon 1994) (stating that a person commits murder if he intentionally or knowingly causes the death of an individual).

4

death of Moreno while actually trying to kill Bustos. We find this proposition meritless based upon a plain reading of §6.04(b) of the Penal Code. Though euphemistically called "transferred *intent*," the concept espoused in that section of the Code does not deal with intent or any other *mens rea*. Rather, it depicts an effort by the legislature to criminalize an act which resulted in injury or harm to someone other than the person to whom the injury or harm was actually directed. As much can be garnered from the wording of the statute. In stating that one "is *nevertheless* criminally responsible for *causing a result* if the only difference between what actually occurred and what he [intended, knew or risked] is that a different person was" harmed or injured, the legislature was addressing the results of the conduct. TEX. PEN. CODE ANN. §6.04 (b)(2) (emphasis added). That is, it was telling the public that it did not matter who was hurt or affected by the act. As long as the accused intended, knew or risked hurting or affecting a particular person and *someone* was affected, the accused would be culpable for the crime he tried to commit. So, acting with a particular *mens rea viz-a-viz* the actual victim was and is unimportant, and such a *mens rea* need not be alleged nor proved. Indeed, if this were not so, and if the State were required to allege and prove that the accused acted with a particular *mens rea* towards the ultimate victim, then their concept of transferred intent would be superfluous.[3]

Finally, we address appellant's contention about describing the nature of the deadly weapon used to cause the death of Moreno. He believes that it was not enough to simply allude to it as a deadly weapon; this was so despite the trial court's description of it as a

---

[3]For instance, if the State was obligated to prove that appellant intended to cause the death of Moreno while intending to kill Bustos, there would be no need to even refer to Bustos. Intending to cause the death of Moreno and causing it would be enough to warrant conviction.

5

"firearm" when alluding to the deadly weapon with which appellant intended to kill Bustos. This argument also fails for reasons similar to those mentioned in the immediately preceding paragraph. Again, the gist of §6.04(b) involves criminalizing conduct resulting in someone's injury or harm, irrespective of whether the person harmed or injured was the intended victim. And, in telling the jury what they must find to convict when §6.04(b) is involved, the trial court need only allude to the actual victim as the person who suffered harm or injury meant for another. The expressed wording of §6.04(b) requires nothing more when referring to the actual victim. So, the trial court at bar was not obligated to tell the jury that to convict appellant, it had to find that he used a "firearm" to kill Moreno; this is so since the nature of the deadly weapon had already been described in referring to the acts of appellant which were directed at Bustos.

### Issue Two – Comment on the Evidence

Next, appellant alleges that the trial court failed to incorporate the concept of transferred intent into its instruction on the lesser included offense of manslaughter. And, because it did not, the instruction given was a comment on the evidence. We disagree and overrule the point.

First, it has been held that the failure to charge the jury on transferred *intent* when submitting an instruction on manslaughter is not a comment on the weight of the evidence. *Juarez v. State*, 886 S.W.2d 511, 515 (Tex. App.–Houston [1st Dist.] 1994, pet. ref'd). Second, to the extent that the case cited by appellant, *Garrett v. State*, 624 S.W.2d 953 (Tex. App.–San Antonio 1981), *rev'd on other grounds*, 642 S.W.2d 779 (Tex. Crim. App. 1982), suggests otherwise, we note that the *Garrett* holding was dependent upon the

6

nature of the charge given by the trial court. There, "the State's theory [regarding manslaughter] relied upon transferred intent." *Id.* at 957. Thus, the appellate court concluded that the jury had to be told about that issue via the charge.

Here, reference to manslaughter in the charge did not implicate transferred intent. That is, the jury was not told that it could find appellant guilty of same, if it concluded that his reckless conduct was directed at one person but resulted in injuring someone else.[4] Instead, the trial court instructed that appellant could be found guilty of manslaughter if appellant recklessly discharged a firearm "in the direction of" the particular decedent and the discharging of the weapon caused the death of the decedent. In the trial court's focusing upon appellant's alleged reckless discharge of the gun towards the decedent as opposed to some third party whom appellant missed, there was no need to inform the jury that appellant could be held responsible for the crime even though he missed this unmentioned third party and struck the decedent. Simply put, the circumstances described in the application paragraph at issue had nothing to do with transferred intent. So, *Garrett* was and is inapposite.

### *Issues Four, Five, and Six – Sufficiency of the Evidence*

Appellant next challenges the legal and factual sufficiency of the evidence supporting the verdict. He claims that the evidence was insufficient to demonstrate that he intentionally and knowingly 1) shot at Bustos, 2) tried to cause the death of Bustos, and 3) caused the death of Moreno. We overrule the contentions.

---

[4]Manslaughter implicates the *mens rea* of recklessness. *See* TEX. PEN. CODE ANN. §19.04 (Vernon 1994) (stating that a person commits manslaughter if he recklessly causes the death of an individual).

7

*Standard of Review*

The standards of review applicable to questions of legal and factual sufficiency are well-settled and need no explanation. We find it adequate to merely cite the parties to *King v. State*, 29 S.W.3d 556 (Tex. Crim. App. 2000) and *Clewis v. State*, 922 S.W.2d 126 (Tex. Crim. App. 1996).[5]

*Application of Standard*

A person commits murder if he intentionally or knowingly causes the death of an individual. TEX. PEN. CODE. ANN. §19.02(b)(1)(Vernon 1994). Furthermore, a person acts intentionally or knowingly with respect to a result of his conduct when he is aware that his conduct is reasonably certain to cause the result. TEX. PEN. CODE. ANN. §6.03(a) and (b) (defining culpable mental states of intentionally and knowingly). Yet, as alluded to in our discussion of the preceding issue, one may still be held liable for murder if he kills someone other than the person he intended to kill. *See* TEX. PEN. CODE ANN. §6.04(b)(2) (discussing this concept). In that regard, all the State need prove is that the only difference between what actually occurred and what he intended or knew would occur is that he caused the death of someone other than the one he tried to kill. *Id.* With this said, we now peruse the evidence before us.

Of record, we find evidence illustrating that: 1) appellant and Moreno were both present at the bar the night of February 24, 1999; 2) each was there with a group of friends

---

[5]We would note, however, that in urging legal insufficiency, the appellant should focus upon the evidence appearing of record and explain why it was not enough to support the verdict. This is so because we cannot reverse unless we explain why that evidence was deficient. *In the interest of T.M.*, 33 S.W.3d 341, 349 (Tex. App.–Amarillo 2000, no pet.). It is not enough for us to merely conclude that the evidence was wanting. So, an appellant should do more than simply allude to the evidence that favors an acquittal. Rather, he should undertake to explain why the evidence purporting to favor conviction does not.

and/or family members; 3) Junior, one of appellant's friends, was hit in the head with a billiard ball by Bustos, one of the individuals in Moreno's group; 4) the fight in the pool hall spilled out into the parking lot, where a number of vehicles were damaged, 5) appellant's car was damaged by Bustos; 6) appellant left the bar with Junior and proceeded to appellant's house; 7) appellant retrieved a shotgun and pistol from underneath his bed and gave the shotgun to Junior; 8) appellant and Junior then returned to the bar; 9) the appellant recalled seeing "people around a black car;" 10) appellant drove around to the back of the establishment; 11) at the time, the victim and Bustos were in a black car along with four other people; 12) when the appellant drove up, people were attempting to enter the black car; 13) the appellant and Junior exited their vehicle, aimed their weapons at the black car, and began shooting; 14) after discharging the weapons, the two drove back to appellant's house and hid the guns; 15) that night Moreno died of a bullet wound to the head; 16) the bullet removed from his head was of the same caliber as the ammunition fired from appellant's pistol; 17) Bustos, who allegedly hit Junior with a billiard ball, had been sitting in the passenger seat of the car at the time of the shooting; 18) as a result of the shooting, the window where Bustos had been sitting was shot out; 19) Bustos' window was the only window shot out; 20) the black car did not have tinted windows; 21) when the shooting began at least one door of the black car was open; 22) the interior light of the car had also been in working condition that night; 23) the parking lot was well lit at the time of the shooting; 24) Bustos saw the shooters kneeling and aiming at the car; 25) when appellant discovered that someone had died as a result of the shooting he threw the weapons in T-Anchor Lake; and 26) appellant later confessed to shooting at the car in the parking lot and throwing the weapons in the lake. From this, a jury could conclude, beyond

9

reasonable doubt, that appellant caused the death of Julian Moreno, although he intended to cause the death of Ambrose Leon Bustos. That is, a rationale jury could have reasonably inferred that appellant intended to shoot and kill Bustos in retaliation for the earlier happenings, saw him in the car, fired, and instead killed Moreno. Thus, appellant's conviction for murder is supported by legally sufficient evidence.

That the evidence of guilt was not free of contradiction, that appellant denied intending to kill anyone, that he denied knowing anyone was in the black car, and that the credibility of witnesses may have been subject to question does not require us to conclude that the verdict was factually insupportable. Those circumstances merely create issues for the jury to resolve. And, based upon our review of the entire record, we cannot say that the verdict was clearly wrong or manifestly unjust. Thus, the conviction also enjoyed the support of factually sufficient evidence.

### Issue Seven – Admission of the Autopsy Report

Lastly, appellant claims that the trial court erred in admitting an autopsy report into evidence. It allegedly did so because the report was hearsay and the State failed to lay a proper predicate for its admission as a business record under Texas Rule of Evidence 803(6). We overrule the point.

Irrespective of whether the State presented evidence satisfying the elements for admitting a document as a business record, the trial court had before it an autopsy report. This is of significance for such a report has been held to be, as a matter of law, a public record. *Butler v. State*, 872 S.W.2d 227, 237-38 (Tex. Crim. App. 1994), *cert. denied*, 513 U.S. 1157, 130 L.Ed. 2d 1079, 115 S.Ct. 1115 (1995). And, as a public record, it is admissible as an exception to the hearsay rule. *Id.* at 238. So, because the standard of

review is one of abused discretion, *Wyatt v. State*, 23 S.W.3d 18, 29 (Tex. Crim. App. 2000), and the report was admissible irrespective of Rule 803(6), we conclude that the trial court did not err in admitting it. *See Romero v. State,* 800 S.W.2d 539, 543 (Tex. Crim. App. 1990) (holding that an appellate court may affirm a trial court's decision to admit evidence for reasons other than those mentioned to the court).

Accordingly, we affirm the judgment of the trial court.


Brian Quinn
Justice

Publish.