**Robert C. STUART, Appellant,**

v.

**COLDWELL BANKER & COMPANY,**
**Appellee.**

**No. 16867.**

Court of Civil Appeals of Texas, Houston (1st Dist.).

June 2, 1977.

Rehearing Denied June 30, 1977.

Philip C. Koelsch, Robbins & Crowder, Winston P. Crowder, Houston, for appellant.

Roger R. Wright, Jr., Houston, for appellee; Woodard, Hall, McCrory, Henry & Primm, Houston, of counsel.

EVANS, Justice.

This is an action to recover a real estate commission on the lease of certain property belonging to the appellant. After a nonjury trial, judgment was entered in favor of the appellee for the sum of $33,378.50, the amount of its claimed commission, and for an additional sum of $5,000.00, which was awarded to the appellee as attorney's fees. The trial court's judgment will be affirmed.

An amended brief was filed by the appellant, just prior to oral submission, in which his points of error were increased from seven to twenty-three, and which, for the first time, sets forth his contentions that the evidence is factually insufficient to support the trial court's judgment. The appellee opposes the filing of this amended brief.

■ In order to effectuate the cause of justice, an appellate court has the authority to permit an appellant to file an amended brief and to include therein additional points of error, either prior to or after submission, upon such reasonable terms as it may prescribe. Rules 422, 429 and 431, T.R.C.P. *Warren Independent School Dist. v. Southern Neches Corp.*, 405 S.W.2d 100, 104 (Tex.Civ.App.—Beaumont 1965, writ ref'd n.r.e.), 404 S.W.2d 809 (1966). However, litigants are entitled to an expeditious determination of their appeal, and the rules should be given an interpretation which will further, and not impede, the orderly disposition of the cause. *King v. Cron*, 285 S.W.2d 833, 834 (Tex.Civ.App.—San Antonio 1955, writ ref'd n.r.e.), cert. denied, 352 U.S. 843, 77 S.Ct. 67, 1 L.Ed.2d 59 (1956).

■ As appellee correctly points out in its opposition to the filing of the amended brief, the additional points of error included in the amended brief do not raise new assignments which substantially change the contentions advanced by the appellant in his original brief. Thus, this court can perceive no harm, prejudice or delay which will result from the filing of the amended brief, and leave to file is granted.

On January 12, 1973 the appellant, Robert C. Stuart, and a third party, Lister Properties Company, executed a lease option agreement which provided that in consideration of the sum of $11,000 paid to the appellant, Lister Properties Company was granted an exclusive option to lease, for a 51 year term, a tract of eight acres to be surveyed out of a larger tract of land belonging to the appellant. The agreement provided that the option was subject to

being exercised by Lister Properties Company within a period of 11 months following the date of the agreement.

On the same day, January 12, 1973, but at a later hour, the appellant executed and delivered to the appellee the following commission agreement which constitutes the basis for this suit:

"January 12, 1973

Mr. J. Michael Boyd

COLDWELL, BANKER AND COMPANY

3700 Buffalo Speedway

Houston, Texas 77006

Dear Mr. Boyd:

As consideration for your services in securing Lister Properties, Inc., to lease my property at Bellfort and Telephone Road in Houston, Texas, I agree to pay Coldwell, Banker and Company as a real estate commission Thirty-Five Thousand One Hundred Twenty-Eight and 80/100 Dollars ($35,128.80) which is 1.640% of the total guaranteed annual rental provided for in the lease document. This sum is to be payable over a period of eighteen (18) months at One Thousand Seven Hundred Fifty and No/100 Dollars ($1,750.00) per month, which is to be paid out of the money received from Lister Properties. At the end of the 18-month period, the balance remaining will be paid in one payment. Any part or all of this sum may be prepaid at any time at my option. It is understood and agreed that this commission is payable only if Lister Properties, Inc., executes the option to lease my property. The 18-month payout period will begin on the date Lister Properties exercises its option.

Sincerely,

/s/ Robert C. Stuart

Robert C. Stuart

2510 Inwood Drive

Houston, Texas 77019

Subsequently, on November 1, 1973, Lister Properties Company exercised the lease option agreement and assumed possession of the property under the lease. The appellee thereafter brought this action to recover its real estate commission.

The trial court found, among other facts, that the appellant had been introduced to the president of Lister Properties Company by the appellee's employees; that following such introduction, such employees negotiated and performed services for the appellant, at his request, which led to the execution of the lease option agreement, and thereafter continued to perform services for and at the request of appellant; and that after the exercise of the option by Lister Properties on November 1, 1973, appellant paid the appellee the amount representing the first monthly installment provided in the commission agreement, but had paid no additional monies thereunder. It further found that Lister Properties Company had constructed a retail shopping center on a portion of the property covered by the lease option agreement and had regularly paid the appellant the monthly rentals provided by the lease option agreement, which the appellant had accepted under protest. The court concluded (a) that the commission agreement constituted a clear and unequivocable promise by the appellant to pay the real estate commission to the appellee; (b) that such agreement, when considered with the lease option agreement, sufficiently described the land so that it could be located on the ground; (c) that the appellee had been the procuring cause of the agreement between the appellant and Lister Properties Company; and (d) that appellee was entitled to the amount of its claimed commission and attorney's fees.

The first contention advanced by the appellant is that his written promise to pay the real estate commission to the appellee is unenforceable because that writing was not executed until after the time he executed the lease option agreement with Lister Properties Company. The appellant also contends that the agreement is invalid in that it does not sufficiently identify the prospective lessee.

Article 6573a § 20(b) Tex.Rev.Civ.Stat. Ann. (Supp.1976–1977) provides as follows:

"An action may not be brought in a court in this state for the recovery of a commission for the sale or purchase of

real estate unless the promise or agreement on which the action is brought, or some memorandum thereof, is in writing and signed by the party to be charged or signed by a person lawfully authorized by him to sign it."

The appellee was required to plead and prove that its claim for a commission was based upon an instrument in writing within the contemplation of this statute. *Tobin v. J. D. Blanton Constr. Co.*, 392 S.W.2d 881, 883 (Tex.Civ.App.—Texarkana 1965, writ ref'd n.r.e.). However it was not required to prove that such writing was in existence at the time it first rendered services on appellant's behalf, nor that such writing predated the agreement between the appellant and the prospective lessee. 12 Am.Jur.2d, Brokers § 51, p. 811; *Bridwell v. Sandefur*, 341 S.W.2d 710 (Tex.Civ.App.—Waco 1960, writ dism'd); *Maloney v. Strain*, 410 S.W.2d 650 (Tex.Civ.App.—Eastland 1966, no writ). The language relied upon by the appellant in *Tobin,* supra, to the effect that a writing need be in effect prior to the sale or lease, is dictum insofar as it pertains to the case at bar, and that decision does not constitute authority for the proposition advanced by appellant.

The lease option agreement and the commission agreement were both executed by the appellant on the same date and as part of an integrated transaction involving the prospective leasing of appellant's land.

In the commission agreement the appellant agreed to pay a commission to the appellee in consideration for its services in securing "Lister Properties, Inc." to lease "my property at Bellfort and Telephone Road in Houston, Texas" as provided in the "lease document", such commission to be payable only if Lister Properties, Inc. executes the option to lease "my property."

The trial court found that the lease option agreement had been executed by the appellant and "Lister Properties Company"; that there was no Texas corporation bearing the name Lister Properties, Inc.; that the entity mistakenly referred to in the commission agreement as "Lister Properties, Inc." was in fact Lister Properties

Company. It further found that the words "lease document" and "option" in the commission agreement referred to the lease option agreement between the appellant and Lister Properties Company.

The evidence is legally and factually sufficient to support these findings by the trial court. The commission agreement is enforceable notwithstanding that it was executed some hours after the execution of the lease option agreement, and it makes sufficient reference to the lease option agreement and the prospective lessee.

The appellant next complains that the lease option agreement does not specifically describe the eight acre tract which is the subject of the lease.

The lease option agreement provides that the leased premises shall contain eight acres of land, the exact size and dimensions to be determined by a survey furnished at the lessor's expense. The description contained in the lease option agreement shows that the eight acre tract was to be surveyed out of the appellant's larger tract of land in the following manner:

"Starting at this said point the boundary of the eight acre tract to be leased is as follows:

On the east by the Telephone Road as now paved measured along a line parallel thereto and eleven feet from the face (east side) of the curb; on the south by the Easement of the Harris County Flood Control District; on the west by the easterly line of the Easement of the City of Houston for Bellfort Street starting at the said Flood Control Easement and extending northerly and westerly to a point on said street easement which when connected by a straight line at right angles to Bellfort and extending northerly to a point on the dividing line between Greenway Park Subdivision which is 460 feet westerly of the point of beginning of this said eight acre tract as tentatively shown by a sketch for Lessee which was prepared by Hoff, Blackstone, Strode Architects (drawn by RMB and dated 26 Oct. '72): THENCE in an easterly direction along

said northerly dividing line of Greenway Park Subdivision to the point of beginning.

In the event exactly eight acres is not enclosed by these described boundaries the westerly line, northerly from Bellfort, is to be moved westerly and parallel thereto to contain eight acres provided the new western boundary does not increase the frontage of this tract on Bellfort over ten feet."

The appellant's position is that this description requires the leased premises to contain exactly eight acres of land, "no more and no less", and that the western boundary of the eight acre tract must intersect Bellfort Street at "right angles." The appellant's surveying witness testified to the effect that a tract of exactly eight acres could not be located on the ground if the west line of the tract was drawn from the northwest corner (460 feet from Telephone Road) so as to intersect Bellfort Street at right angles. Therefore the appellant contends that the description in the lease option agreement is legally insufficient to locate the subject tract of land.

It is obvious that the field note description contained in the lease option agreement was not based upon an actual ground survey, but rather upon data which was intended to serve as a guide to a surveyor in locating the eight acre tract on the ground.

■■■ Where an actual ground survey has been made and the footsteps of the surveyor can be followed with certainty, the surveyor's actual location will control conflicts in calls or ambiguities in the field notes. However, where there is only an "office" survey, as in the case at bar, the intent of the parties must be determined from the terms of the document itself, considered in the light of all surrounding facts and circumstances. *Phillips Petroleum Co. v. State*, 63 S.W.2d 737 (Tex.Civ.App.—Austin 1933, writ ref'd).

It is clearly apparent from the terms of the lease option agreement that the parties thereto contemplated the leased premises would include exactly eight acres of land.

Equally clear is the parties' understanding that the leased premises would adjoin Telephone Road on the east, Bellfort Street on the south, and that the northwest corner would be located 460 feet from the point of beginning. The one matter left for the surveyor's determination, using the information contained in the field notes, was the location of the west line of the tract, and particularly its point of intersection with the north line of Bellfort Street. In making this determination, the surveyor was required to place the west line in such location that the tract would contain exactly eight acres of land, subject only to the expressed limitation that the tract's frontage on Bellfort Street should not be increased by more than ten feet.

The survey plat in evidence demonstrates that the eight acre tract can be located on the ground, using the field note data contained in the lease option agreement. This plat shows that by merely reversing the order of the calls, the west line can be extended from the designated northwest corner of the tract, which corner is 460 feet from the point of beginning, to its point of intersection with Bellfort Street, so that exactly eight acres of land is contained within the boundaries of the surveyed land. Although this construction does not permit the west line of the tract to intersect Bellfort Street at exact right angles, it does give effect to the intent of the parties as manifest by the terms of the document.

■■■ The construction to be given the description in the lease option agreement was a matter for the trial court. In making this determination, the trial court was not bound to give controlling effect to every call in the field notes, or even to strictly follow the ordinary priority of calls. *Wheeler v. Stanolind Oil & Gas Co.*, 151 Tex. 418, 252 S.W.2d 149 (1952); *Giles v. Kretzmeier*, 239 S.W.2d 706 (Tex.Civ.App.—Waco 1951, writ ref'd n.r.e.). Circumstances may vary their usual order of dignity. *Stafford v. King*, 30 Tex. 257 (1867); *Huff v. Crawford*, 89 Tex. 214, 34 S.W. 606 (1896).

■ In order to give a reasonable construction to the description, the trial court was required to disregard only the one call in the field notes indicating the west line to have a right angle intersection with Bellfort Street. In locating a survey pursuant to the expressed intent of the parties, it is not unusual to deviate from the called degree of declination. *Wyman v. Harris*, 222 S.W.2d 297 (Tex.Civ.App.—Beaumont 1949, writ ref'd n.r.e.); *Parker v. T. O. Sutton & Sons*, 384 S.W.2d 433 (Tex.Civ.App.—Beaumont 1964, no writ).

> "As a rule a specific and definite call for an angle must be observed; but where the call is general and descriptive merely, the line may be deflected from the angle called for, if thereby the intention shown in the language of the instrument, in the light of the situation of the land, and the circumstances of the case, will be best subserved . . ." 11 C.J.S. Boundaries § 9, p. 549.

■ The description contained in the lease option agreement affords a sufficient basis for locating a tract of eight acres on the ground. The trial court did not err in harmonizing the calls in the description in such manner as to give effect to the parties' intent, as manifest by the terms of the document, and in concluding the description to be legally sufficient.

■ In his last point of error the appellant contends that the trial court erred in refusing to consider the appellee's answers in response to the appellant's request for admissions. The appellee had admitted, in compliance with appellant's request, that it had received certain letters in which the appellant had stated his position regarding the controversy. The subject matter of the letters was hearsay insofar as appellee was concerned, and the trial court properly refused to consider the letters as evidence against the appellee. No reversible error is presented by this point. Rule 434, T.R.C.P.

The judgment of the trial court is affirmed.