CITY OF WEBSTER, Appellant,

v.

CITY OF HOUSTON, et al., Appellees.

No. C14–92–00600–CV.

Court of Appeals of Texas,
Houston (14th Dist.).

May 27, 1993.
Rehearing Denied June 24, 1993.

C. Charles Dippel, Houston, for appellant.

E.W. Beauchamp, Kenneth Wall, Billy R. Smith, Thomas R. Fox, Houston, for appellees.

Before ROBERTSON, CANNON and BOWERS, JJ.

## OPINION

ROBERTSON, Justice.

Appellant, City of Webster (Webster), appeals from an adverse judgment in a boundary dispute with the City of Houston (Houston), Doyle A. Graham, Graham & Horlock, Harris County Appraisal District, Harris County Appraisal Review Board, Harold Stall, and Dorothy Stall, appellees[1]. In four points of error, Webster complains of the sufficiency of the evidence to support the judgment and of an improper submission of a jury question. We affirm.

This dispute between Webster and Houston arose from attempts by both cities to annex property in 1977. Houston claimed it annexed property in its exclusive extraterritorial jurisdiction. Webster made a similar claim. Webster sought a declaratory judgment to establish that its 1977 annexation ordinance was valid and that Houston's 1977 annexation ordinance did not include property within Webster's extraterritorial jurisdiction. Houston sought a counter declaration that Webster's 1977 ordinance was invalid to the extent that it included certain territory abandoned by Webster in 1962 and that Houston's 1977 ordinance included that territory.

Houston based its new boundary on Webster's extraterritorial limits established by Webster ordinance 62–14 that attempted to disannex Webster property in 1962. Webster argued that 62–14 failed to close, therefore it was invalid and did not reduce its extraterritorial jurisdiction. Both parties agree that the resolution of this dispute centers on the effect of Webster's ordinance 62–14 purporting to disannex ter-

1. In a separate action, Webster also filed suit against Doyle A. Graham, Graham & Horlock, Harris County Appraisal District, Harris County Appraisal Review Board, Harold Stall, and Dorothy Stall. Webster sought to have the property in their 1977 annexation ordinance placed on its tax roles. Although these parties did not appear at trial in the present action, all parties to this second action stipulated to be bound by the outcome of the action between Webster and Houston.

ritory. The extent to which that ordinance was effective determines the cities' respective extraterritorial jurisdiction.

Webster passed 62–14 in 1962 in an attempt to disannex property it annexed in 1960. The validity of 62–14 is important because in 1963 the Municipal Annexation Act established Webster's extraterritorial jurisdiction as one-half mile from its city limits existing on August 23, 1963. *See* TEX.REV.CIV.STAT.ANN. art. 970a (current version at TEX.LOCAL GOV'T CODE ANN. Ch. 42 (Vernon 1988)).

■■ Boundaries are determined by the calls used to describe the property unless there are conflicts or inconsistencies. *See Gilson v. Universal Realty Co.,* 378 S.W.2d 115 (Tex.Civ.App.—Houston 1964, writ ref'd n.r.e.); *Mayflower Invest. Co. v. Stephens,* 345 S.W.2d 786 (Tex.Civ.App.—Dallas 1960, writ ref'd n.r.e.). In determining the location of a survey, all calls should be harmonized together and they should be harmonized as far as possible. *Sweats v. Southern Pine Lumber Co.,* 361 S.W.2d 214, 219–20 (Tex.Civ.App.—Houston 1962, writ ref'd n.r.e.). Calls may not be added to a description of property to show that a governing body intended to close a description. *State ex rel. Rose v. City of La Porte,* 386 S.W.2d 782, 788 (Tex.1965). The construction of an ordinance must be done in such a manner as to uphold it, if this can reasonably be done. *City of Clute v. City of Lake Jackson,* 559 S.W.2d 391, 395 (Tex. Civ.App.—Houston [14th Dist.] 1977, writ ref'd n.r.e.). The description of territory to be annexed by ordinance need not be defined with the precision and niceties required by deeds and contracts. *State ex rel. Rose,* 386 S.W.2d at 789. A reasonable construction of inaccuracies in boundary description in municipal ordinances should "be made of the whole of the ordinance provisions in order to carry into effect the intent of the body which enacted it." *Id.* at 788. The caption of an ordinance may be used in determining the intent of the city officials when enacting an ordinance. *Town of Port Acres v. City of Port Arthur,* 340 S.W.2d 325, 330 (Tex.Civ.App.—Beaumont 1960, writ ref'd n.r.e.). It is an established rule that a conveyance of land adjoining a street or highway is presumed to carry with it the fee to the center of the street or highway, and establishes the center line as the dividing line. *Rio Bravo Oil Co. v. Weed,* 121 Tex 427, 50 S.W.2d 1080 (1932), *cert. denied,* 288 U.S. 603, 53 S.Ct. 387, 77 L.Ed. 978 (1933); *Day v. Chambers,* 62 Tex. 190 (1884). This presumption applies to conveyances by the state or any governmental subdivision. *Joslin v. State,* 146 S.W.2d 208, 211 (Tex.Civ.App.—Austin 1940, writ ref'd). This is so unless the conveyance contains an express reservation pertaining to the right of way. *Id.*

At trial, Webster presented two expert witnesses to support its theory that the specific property description in Ordinance 62–14 did not effectively disannex property because it did not form a closure. In the alternative, Webster argued that the description in the caption of 62–14 alone evidenced the property to be abandoned. The caption of Ordinance 62–14 states:

AN ORDINANCE PROVIDING FOR THE DISCONTINUANCE OF A PORTION OF THE TERRITORY OF THE CITY OF WEBSTER, TEXAS, SUCH TERRITORY BEING THE ENTIRE AREA EAST OF HOUSTON LIGHTING AND POWER COMPANY'S NORTHEAST PROPERTY LINE AND SOUTH OF FM HIGHWAY 528, ...

Ron Nelson, a registered professional land surveyor testified on behalf of Webster. Nelson believed the caption alone definitely and certainly described an area to be excluded from Webster. Using just the caption, Nelson believed the caption showed Webster's intent to retain the right of way of F.M. 528 within its territory because the caption calls for the disannexation of property south of F.M. 528.

Nelson believed the intent of Webster was most clearly expressed by the caption because, in his opinion, the specific description of the property could not form a closure. Nelson went over the entire description, call by call, and found the description did not close. Nelson testified that the beginning could not be any place other than the northwest corner of Lot 4, Block

66 of Houston Orchard Company's Webster Subdivision as called for by the ordinance. He did encounter a problem with the first call because it called for a northwesterly projection of the northwest line. A northwest line can only be projected southwesterly or northeasterly. Nelson resolved the ambiguity by projecting the line northeasterly to the northwest right of way line of F.M. 528 as called for by the remainder of the call. This point on F.M. 528 would establish the most northeasterly point of Webster's territorial limit as of August 1963 if the remaining calls formed a closure.

Nelson found some smaller discrepancies within calls two through five but he was able to reconcile these discrepancies to his own satisfaction. He was not able to reconcile the problems created by the sixth and final call. In his opinion, this call prevented closure because it called for a boundary along the northeast property line of H L & P's property line to its intersection with the northeast line of Lot 4 Block 66 of Houston Orchard Company's Webster Subdivision, the point of beginning. He testified that two northeast lines cannot intersect and a call would have to be added to form a closure. A call may not be added to a description of property to show that a governing body intended to close a description. *State ex rel. Rose*, 386 S.W.2d at 788 (Tex.1965). Therefore, Nelson testified that, in his opinion, the specific description of 62–14 in no way could be found to form a closure and that only the caption could support any disannexation of property by Webster.

William Walsh, a licensed state land surveyor and registered public surveyor, also testified on behalf of Webster. He testified that the beginning of the specific description could be no place but the northwest corner of Lot 4, Block 66 of Houston Orchard Company's Webster Subdivision as called for in the description. In his opinion, the specific description could not close because the northeast property line of H L & P's property could never intersect with the northeast line of Lot 4 as described in the sixth and final call.

Lonnie Pace, a registered professional land surveyor, testified on behalf of Houston. Pace also found problems with the first call. However, he did not follow the northeasterly projection used by Nelson. Instead, Pace struck the word northwestern and projected the northwest line to the northwest right of way of F.M. 528. From that point, he was able to follow the second through fifth calls in a manner consistent with Nelson. Pace did find a clear ambiguity in the sixth and final call. In his opinion, he felt the drafter confused the northeast and northwest property. He stated that in the case of an ambiguity, a surveyor is aided by two presumptions. First, the drafter did intend to describe property, and second, the drafter did intend to go from the end of the call to the point of beginning. Using these presumptions, Pace struck the word northeast from the call where it said the northeast line of Lot 4. This caused the last call to intersect with the right of way of F.M. 528 and the H L & P northeast property line. This point was thirty feet from the intersection of F.M. 528 as found by Pace's interpretation of the first call. Pace stated, however, that the first call could actually have started thirty feet over because the road next to Lot 4 had been abandoned and therefore, the abandoned right of way belonged to Lot 4. Using this construction, the last call intersected with the point of beginning and 62–14 closed. The jury found that 62–14 did indeed close.

In its first three points of error, Webster complains about the sufficiency of the evidence to support the trial court's judgment. Webster argues that the evidence conclusively established its 1977 annexation included territory in its extraterritorial jurisdiction as a matter of law; that no evidence supported the jury's finding that 62–14 closed; and that the jury's finding was against the great weight and preponderance of the evidence.

■ When reviewing a "matter of law" challenge, we must first examine the record for evidence that supports the failure to find, ignoring all evidence to the contrary. Only if we find no evidence to sup-

port the failure to find do we examine the entire record to determine whether the proposition is established as a matter of law. *Sterner v. Marathon Oil Co.*, 767 S.W.2d 686, 690 (Tex.1989). Webster must demonstrate that the evidence conclusively established all vital facts in support of this issue as a matter of law. *Ritchey v. Crawford*, 734 S.W.2d 85, 86 (Tex.App.—Houston [1st Dist.] 1987, no writ).

 Webster argues that there is no way that the specific property description of 62–14 could form a closure, therefore, only the caption should be looked at to establish the property that it abandoned in 1962. As testified to by Nelson, the caption would only support a disannexation of property south of F.M. 528. This would give Webster a much further point north as of August 1963 when its extraterritorial jurisdiction was established and the land annexed in 1977 would be within its territory. Webster argues that this is established as a matter of law because the specific description could not form a closure.

However, Pace testified that 62–14 could form a closure. He did admit that the caption should be used to determine the property annexed, but he stated that it should be used to help solve ambiguities in the calls. Webster argues that even if Pace's interpretation is used, it still does not close because the ending point would be thirty feet from the point of beginning. Webster argues that you cannot move the beginning point as urged by Pace because it specifically refers to a point on a plat.

Texas courts have long presumed that a conveyance of property includes the conveyance of the right of way. Additionally, small gaps have been closed by adding or projecting a line to close a small gap. *See City of Houston v. Harris Co. Eastex Oaks Water & Sewer Dist.*, 438 S.W.2d 941, 946 (Tex.Civ.App.—Houston [1st Dist.] 1969, writ ref'd n.r.e.) (reasonable construction found to close gap of 100–150 feet by projecting a line). If the specific description could be closed, the caption alone could not be used to determine the property abandoned by Webster. Even if the description did not close, Webster's interpre-

tation of the caption goes against the presumption that a conveyance along a road includes the right of way. This is true even in conveyances by governmental entities. While it is only a presumption, Webster did not offer evidence to rebut it. The caption states the entire area east of H L & P and south of F.M. 528 is to be discontinued. The specific description calls for a projection to the right of way of F.M. 528 in the first call. This shows Webster's intent to abandon the property up to and including the right of way and supports the presumption. This is competent evidence of intent even if the specific description did not close. The evidence supports the failure to find as a matter of law that the territory annexed by Webster in 1977 was within its extraterritorial jurisdiction. Point of error one is overruled.

 In its second point of error, Webster claims there is no evidence to support the jury's finding that the specific description of 62–14 properly closed. When faced with a "no evidence" challenge, we only consider the evidence and reasonable inferences drawn from the evidence which, when viewed in their most favorable light, support the jury verdict, and must disregard all evidence and inferences to the contrary. *Davis v. City of San Antonio*, 752 S.W.2d 518, 522 (Tex. 1988). If there is more than a scintilla of evidence to support the finding, the no evidence challenge cannot be sustained. *Stafford v. Stafford*, 726 S.W.2d 14, 16 (Tex.1987).

The evidence showed an intent of Webster to disannex property. The caption showed evidence of an intent to form a closure. Using the intent of the caption, along with basic principles of determining the meaning of calls, Pace either found a closure or a description with a gap of only thirty feet. Finding more than a scintilla of evidence to support the jury's finding, Webster's second point of error is overruled.

 Webster's third point of error claims the jury's verdict is against the great weight and preponderance of the evidence. In face of such a challenge, this

court must examine and weigh all of the evidence, and set aside the verdict only if it is so contrary to the overwhelming weight of evidence that it is clearly wrong and unjust. *Lofton v. Texas Brine Corp.,* 720 S.W.2d 804, 805 (Tex.1986); *Cain v. Bain,* 709 S.W.2d 175, 176 (Tex.1986).

Both of Webster's experts testified that the specific description could not close. Webster relied on the argument that the area abandoned could only be determined from the caption of 62–14. Pace testified for Houston that in his opinion the description could close. He used not only the specific description but also used the caption to determine the intent of the drafter. Using acceptable surveying principles, he determined the description did close.

Webster argues that Pace based his closure on moving the point of beginning over thirty feet so that it would meet his interpretation of the last call. As discussed above, even if the corner stays at the location shown on the plat, it only creates a gap of thirty feet and such a de minimis gap would not defeat closure.

Webster also argues that in the sixth call, Pace ignored a higher dignity call, an artificial object, and honored one of lesser dignity, direction, to get back to the point thirty feet from the beginning. Pace testified that the dignity or priority of calls is only a guideline, and that in case of ambiguities, the more significant rule is to consider the call or description as a whole, adding nothing and striking the fewest elements to achieve a construction that makes sense. Exceptions may also be made to carry out the intent of the grantor. *See Wheeler v. Stanolind Oil & Gas Co.,* 151 Tex. 418, 252 S.W.2d 149 (1952); *Stuart v. Coldwell Banker & Co.,* 552 S.W.2d 904, 909 (Tex.Civ.App.—Houston [1st Dist.] 1977, writ ref'd n.r.e.). Webster's expert Nelson admitted during cross-examination that there would be exceptions for a lower dignity call prevailing over a call with a higher dignity if the contrary is proven by a preponderance of the evidence.

The jury is the sole judge of the credibility of the witnesses and the weight to be given their testimony. *Jones v. Tar-*

*rant Utility Co.,* 638 S.W.2d 862, 866 (Tex. 1982); *Lee–Wright, Inc. v. Hall,* 840 S.W.2d 572, 579–80 (Tex.App.—Houston [1st Dist.] 1992, no writ). The trier of fact may resolve conflicts and inconsistencies in the testimony of any one witness as well as the testimony of different witnesses. *Webb v. Jorns,* 488 S.W.2d 407, 411 (Tex. 1972); *Lee–Wright, Inc.,* 840 S.W.2d at 579–80. This court can not retry the case or otherwise substitute its judgment or its opinion for that of the jury. *Lofton,* 720 S.W.2d at 805; *Baptist Memorial Hosp. Sys. v. Smith,* 822 S.W.2d 67, 81 (Tex. App.—San Antonio 1991, writ denied). The jury heard the testimony of all three experts. The finding of the jury was not so contrary to the overwhelming weight of evidence that it is clearly wrong and unjust. Webster's third point of error is overruled.

Webster's fourth point of error deals with the submission of the charge to the jury. The first question asked the jury to determine whether the property description in 62–14 formed a closure. The jury found that it did. The second question was conditioned on a negative answer to question one. If the jury found 62–14 did not form a closure, it was then asked to determine the most northeasterly point of Webster's territory so a determination could be made of the extent of Webster's extraterritorial jurisdiction.

Webster objected to the first question on the grounds that it was evidentiary and did not answer the controlling issue of Webster's boundary as of August 1963. Webster also objected to the condition of Question Two on a negative finding to Question One. These objections are without merit. Webster argued that 62–14 could not close. Houston argued that it did. If the jury found 62–14 formed a closure then Webster's extraterritorial jurisdiction was firmly established. Webster did not argue an alternative closure to that of the interpretation of Houston's expert. Nelson did argue that the first call could lead to a different point on F.M. 528, possibly extending Webster's extraterritorial jurisdiction, but he went on to say that there was no way

the description could form a closure. Houston's expert also testified that his interpretation of the first call only called for the deletion of the word northwest. In his opinion, to follow the interpretation of Nelson, not only would northwesterly have to be changed to northeasterly, but the call would have to be changed to read "northeasterly along the northwest line of lot 4 ... and then a projection of the northwest line of Lot 4 ... to the northwest right of way line of F.M. 528." Webster's interpretation required much more of a change and in any event, both of its experts testified the description could not close.

If Webster had offered an alternative means of closure, Webster's objections might have merit. However, both parties took opposite views and the jury sided with Houston. Webster argued the caption alone showed the intent of the drafter, but the caption could not be said to form a closure. The jury's answer to Question One did determine the ultimate controlling issue.

Since a positive response to Question One did determine the ultimate issue, the trial court properly conditioned Question Two. The jury did not need to find an alternative northeasterly boundary if it believed Houston's interpretation of 62–14. The trial court did not abuse its discretion in the submission of either Question One or Two. Point of error four is overruled.

Houston brought one counter point stating the trial court never admitted Webster's evidence and it should not, therefore, be used on appeal. This contention is without merit and is overruled.

The judgment of the trial court is affirmed.