

## In The
## Court of Appeals
## Sixth Appellate District of Texas at Texarkana

_____

No. 06-11-00040-CV

_____

COLONEL KENT SCOTT COKER, Appellant

V.

FREDERIC W. GEISENDORFF AND WIFE, BILLIE G. GEISENDORFF, Appellees

On Appeal from the 294th Judicial District Court
Van Zandt County, Texas
Trial Court No. 07-00002

Before Morriss, C.J., Carter and Moseley, JJ.
Opinion by Justice Moseley

OPINION

Frederic W. Geisendorff and wife, Billie G. Geisendorff (the Geisendorffs), brought suit against Colonel Ken Scott Coker (Coker) and others in Van Zandt County, Texas, regarding the title to a called 131-acre tract which is situated astride the Van Zandt County and Henderson County lines.[1] A jury answered questions which favored Coker, but the trial court granted the Geisendorffs a judgment *non obstante veredicto* (NOV) against Coker. It is from the grant of that judgment NOV which Coker now appeals.

There were two types of problems the Geisendorffs were apparently seeking to resolve in their lawsuit. In one part of the lawsuit, there was a question of a boundary line (couched in terms of an action in declaratory judgment), this dispute involving Carmichael and Langham, the owners of property that abuts the north line of the 131-acre tract. The other part of the lawsuit involved a dispute with Coker (with pleadings in trespass to try title as to the entire 131-acre tract)[2] regarding a 26-acre portion of the western portion of the 131-acre tract.

The matter was tried to a jury in a week-long trial. Among the jury questions that were posed were two which are significant here:

---

[1]Originally appealed to the Twelfth Court of Appeals, this case was transferred to this Court by the Texas Supreme Court pursuant to its docket equalization efforts. *See* TEX. GOV'T CODE ANN. § 73.001 (West 2005). We are unaware of any conflict between precedent of the Twelfth Court of Appeals and that of this Court on any relevant issue. *See* TEX. R. APP. P. 41.3.

[2]The Geisendorffs claimed that Coker had wrongfully entered onto the 26 acres "contending it to be a part of the 131 Acre Tract" and was withholding possession of the 26-acre tract from the Geisendorffs. Nonetheless, in their prayer, the Geisendorffs asked for judgment "against Coker for title to and possession of the 131 acre tract." Coker's response specifically asserted that the boundary claimed by the Geisendorffs conflicted with the boundary of his land described in the deed to him.

2

QUESTION NUMBER ONE

Do you find that the Geisendorffs have proved the actual location of the boundaries on the ground of the Called 131 Acre Tract?

. . . .

QUESTION NUMBER TWO

Do you find that the Geisendorffs have proved a valid chain of title to the Called 131 Acre Tract from the State of Texas to them?

The jury answered "NO" to both of these questions.

In the other findings, the jury also found that Farm-to-Market (FM) Road 1861 was not the correct boundary between the tract and the Carmichael property, that there was not a conflict of boundaries between the 26-acre tract claimed by Coker and the 131-acre tract claimed by the Geisendorffs, and that there was not a conflict of boundaries between a 7-acre tract claimed by Coker and the 131-acre tract claimed by the Geisendorffs.[3]

No judgment was entered in the matter for about a year. When the trial court finally acted upon the matter, it severed the cause of action by the Geisendorffs against Carmichael and Langham from the case against Coker and awarded the Geisendorffs a new trial in that part of the conflict. The trial court then awarded a judgment NOV in favor of the Geisendorffs as to their claim against Coker, awarding them title to the 131 acres as it pertained to the claim of Coker.

---

[3]It appears that a 7-acre and 1-acre tract were in some fashion at issue. Although there is a deed of a called 7-acre tract among the exhibits, it contains no metes and bounds description, and the instrument to which it refers for description does not appear in the record. However, neither tract is mentioned in briefing, and there is no apparent effort to obtain a different result as to these tracts in any fashion. The judgment NOV does not address the boundary questions: it focuses solely on the quoted questions, and our review is thus restricted to the complained-of matters.

3

The controversy between the Geisendorffs with Carmichael and Langham remains pertinent to this matter only because it involves the true location of the north boundary of the 131-acre tract. The description of the tract (in use for many years) calls for the north boundary of the 131-acre tract to be the old Tyler and Porters Bluff Road; it is the location of that road when the description was originally written that is in dispute. Over forty years ago, the Texas Department of Transportation constructed FM Road 1861, which basically followed the general route of the old Tyler and Porters Bluff Road. The Geisendorffs claim that the new FM Road tracks the location of the old Tyler and Porters Bluff Road almost precisely, but Carmichael and Langham (and Coker) claim that the original road—which the defendants claim has since been abandoned—was located (at least in one place) some 183 feet south of FM Road 1861.

In his appeal, Coker contends that the judgment NOV was improper because the Geisendorffs failed to prove the location of the north boundary of the 131-acre tract as a matter of law, and the jury finding should therefore prevail. Coker also contends that the trial court erred by not entering a take-nothing judgment against the Geisendorffs because the Geisendorffs failed in their burden of proof as to the title to the property.

In a cross-argument, the Geisendorffs attempt to ameliorate the result of their own pleadings by arguing that should Coker prevail on appeal, any award to Coker should be only as to the 26-acre tract Coker claimed, not the entire 131-acre tract put at risk by the Geisendorffs' pleadings.

The trial court found the evidence legally insufficient to support the jury's answers to questions one and two, and found that a directed verdict in favor of plaintiffs would have been

4

proper regarding plaintiffs' trespass-to-try-title cause of action. Therefore, the court rendered judgment in favor of the Geisendorffs and against Coker, and awarded possession of the 131-acre tract to the Geisendorffs.

The disputations above pertaining to the true location of the old Tyler and Porters Bluff Road (which is yet to be settled) is the basis for Coker's claim that the Geisendorffs failed to prove the boundaries of the Geisendorffs' called 131-acre tract of land.

There was conflict in the testimony between experts (surveyors) for both sides and between long-time residents of the area as to whether FM Road 1861 coincided with the location of the old Tyler and Porters Bluff Road, evidence falling on both sides. However, no one actually presented testimony as to the precise location that Carmichael, Langham, and Coker claimed the road to be. It is quite pertinent that the metes and bounds description in the deed upon which Coker relies called for the north boundary of the 26-acre tract he claimed to be the old abandoned Tyler and Porters Bluff Road and called for that boundary to be some 183 feet south of the current FM Road.[4] Accordingly, the 26-acre tract claimed by Coker would lie entirely within the called 131-acre tract, irrespective of whether the current FM Road tracks the location of the old Tyler and Porters Bluff Road or whether it lies north of the old road.

**Judgment NOV**

Judgment without or against a jury verdict is proper at any course of the proceedings only when the law does not allow reasonable jurors to decide otherwise. Accordingly, the test for legal sufficiency is the same for directed verdicts and judgments NOV. *City of Keller v. Wilson*,

---

[4]The 26 acres does not extend the full east/west length of the 131 acres. Its description calls for its northeast corner to be the northwest corner of the elusive called 7-acre tract, to which reference is made above.

168 S.W.3d 802, 823 (Tex. 2005). Under either scope of review, we view the evidence in the light most favorable to the verdict, crediting favorable evidence if reasonable jurors could, and disregarding contrary evidence unless reasonable jurors could not. *Id.* at 807; *Dodd v. Tex. Farm Prods. Co.*, 576 S.W.2d 812, 814–15 (Tex. 1979); *Zinda v. McCann St., Ltd.*, 178 S.W.3d 883, 890 (Tex. App.—Texarkana 2005, pet. denied); *CPS Int'l, Inc. v. Harris & Westmoreland*, 784 S.W.2d 538, 541 (Tex. App.—Texarkana 1990, no writ); *see* TEX. R. CIV. P. 301. Should we determine that the entry of a judgment NOV was erroneous, we must reverse and render judgment in harmony with the verdict, unless the appellee has presented a cross-point sufficient to vitiate the jury's verdict. *Cain v. Pruett*, 938 S.W.2d 152, 160 (Tex. App.—Dallas 1996, no writ).

We will affirm a judgment NOV if there is no evidence to support an issue, or conversely, the evidence establishes an issue as a matter of law. *Exxon Corp. v. Quinn*, 726 S.W.2d 17, 19 (Tex. 1987). "No evidence" exists, and a judgment NOV should be entered, when the record discloses one of the following: (1) a complete absence of evidence of a vital fact; (2) the court is barred by rules of law or evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a scintilla of evidence; or (4) the evidence establishes conclusively the opposite of a vital fact. *Juliette Fowler Homes, Inc. v. Welch Assocs.*, 793 S.W.2d 660, 666 n.9 (Tex. 1990). To determine whether there is any evidence, we must review the record in the light most favorable to the verdict, considering only the evidence and inferences that support the verdict and rejecting the evidence and inferences contrary to the verdict. *Mancorp, Inc. v. Culpepper*, 802 S.W.2d 226, 227 (Tex.

6

1990). When there is more than a scintilla of competent evidence to support the jury's findings, the judgment NOV should be reversed. *See id.* at 228.

**The Underlying Pleadings**

The Geisendorffs' briefing and the underlying pleadings are not clearly drafted to explain their claims. Coker's answer is specific. He asserted ownership of the 26-acre tract and the 7-acre tract (this 7-acre tract is apparently no longer in controversy), and the boundary claimed by the Geisendorffs conflicts with a boundary of his land. When read in tandem with the Geisendorffs' pleading, it is clear that the argument between the parties is whether the property purchased by Coker was physically within the 131-acre tract claimed by the Geisendorffs under their deed—and this would be determined by deciding the location of the property.[5]

Historically, a suit concerning rival claims to the same property has not been treated as a boundary dispute, *Texas Parks and Wildlife Department v. Sawyer Trust*, 354 S.W.3d 384, 389 (Tex. 2011), unless that claim was one involving adjoining landowners that would be decided by the location of a boundary line. *See Plumb v. Stuessy*, 617 S.W.2d 667 (Tex. 1981). In that situation, until recently, utilizing the remedy of trespass to try title was the only way in which the dispute could be settled (albeit requiring a less stringent quantum of proof).[6]

---

[5]We also note that this is a transfer case and that the Tyler Court of Appeals, in *Reed v. Turner*, 489 S.W.2d 373, 382 (Tex. Civ. App.—Tyler 1972, writ ref'd n.r.e.), opined in the context of an oil and gas interest that a plaintiff need not necessarily put the whole title to his land in issue when a lesser interest is in dispute. Although not directly on point, it is analogous to this situation, and it is appropriate for this Court to apply the law of the transferring court when such exists. TEX. R. APP. P. 41.3.

[6]In 2007, the Texas Legislature added an exception to the rule that a trespass-to-try-title claim is the exclusive method for adjudicating disputed claims of title to real property. Section 37.004(c) of the Texas Civil Practice and Remedies Code provides that notwithstanding the trespass-to-try-title statute, a person interested under a deed, will, written contract, or other writings constituting a contract may obtain a determination of title based on a property

7

The Geisendorffs' claims against Coker lie in a traditional claim of trespass to try title because Coker's claimed property lies wholly inside the boundaries of the property claimed by the Geisendorffs.

**The Traditional Trespass-to-Try-Title Formulation**

"In trespass to try title, in order to recover, the plaintiff must prevail on the strength of his own title and not on the weakness of his adversary's title." *Bacon v. Jordan*, 763 S.W.2d 395, 396 (Tex. 1988); *Hejl v. Wirth*, 343 S.W.2d 226 (Tex. 1961); *Woodrow v. Henderson*, 783 S.W.2d 281, 282 (Tex. App.—Texarkana 1989, no writ). Recovery can be based on proof of (a) title through regular chain of conveyances from the sovereign, (b) superior title out of a common source, (c) title by limitations, or (d) unabandoned prior possession of the land. *Plumb*, 617 S.W.2d at 668; *Land v. Turner*, 377 S.W.2d 181, 183 (Tex. 1964); *Ramsey v. Grizzle*, 313 S.W.3d 498, 505 (Tex. App.—Texarkana 2010, no pet.); *Session v. Woods*, 206 S.W.3d 772, 774 n.2 (Tex. App.—Texarkana 2006, pet. denied).

**Sufficiency of the Geisendorffs' Proof**

The Geisendorffs argue that they conclusively proved that they had full title to the entirety of the property, showing a regular chain of title from the sovereignty of the soil into themselves. The Geisendorffs provided evidence of transfers through an abstract.[7]

---

boundary line "when the sole issue concerning title to real property is the determination of the proper boundary line between adjoining properties." TEX. CIV. PRAC. & REM. CODE ANN. § 37.004(c) (West 2008); *see* TEX. PROP. CODE ANN. § 22.001(a) (West 2000).

[7]It is quite understandable that although the jury was provided with this evidence, it would have had substantial difficulty in understanding what the documents meant.

This Court has waded through the chain of title provided through the documentation as presented by the Geisendorffs. Based on this review, we find that the abstract does indeed show a regular and uninterrupted chain of title from the sovereign to the Geisendorffs as to the 131-acre tract. Coker argues that one of the deeds in the early part of the chain of title contains an error in the legal description that spoils the continuity of the chain of title upon which the Geisendorffs rely. However, it is quite apparent that the flaw lies solely within an erroneous distance call, and the description goes on to direct the person following the description to go to an existing physical monument (the road). There is a rule of construction regarding the interpretation of the descriptions that we are to follow the "description as a whole, adding nothing and striking the fewest elements to achieve a construction that makes sense . . . to carry out the intent of the grantor." *City of Webster v. City of Houston*, 855 S.W.2d 176, 181 (Tex. App.—Houston [14th Dist.] 1993, writ denied). Further, "calls in a deed for quantities and for courses and distances must yield to calls for lines, corners and objects fixed upon the ground or capable of definite ascertainment." *Bounds v. Taylor*, 415 S.W.2d 940, 945 (Tex. Civ. App.—Texarkana 1967, writ ref'd n.r.e.).

Other than this flaw in a distance call in one deed, Coker does not maintain that the Geisendorffs' chain of title is not complete or broken. We note (taking into account that the burden of proof did not rest with him) that in contrast with the Geisendorffs' chain of title, Coker's chain of title has multiple gaps. Thus, we conclude that the trial court was correct in granting a judgment NOV on that jury question, because the Geisendorffs conclusively proved title from the sovereign.

The remaining question is whether the Geisendorffs proved the actual location of the boundaries on the ground of the 131-acre tract. The jury responded that the Geisendorffs had not. The trial court disregarded that jury finding.

The issue regarding whether the Geisendorffs proved the location of the 131-acre tract centers around the controversy as to the location of the north boundary line—the dispositive issue in the now-severed lawsuit by the Geisendorffs against Carmichael and Langham.

Locating property "on the ground" means to provide sufficient evidence (typically documentary) to identify the disputed property with reasonable certainty so that its location can be physically pinpointed. *See generally Perkins v. McGehee*, 133 S.W.3d 287, 291 (Tex. App.—Fort Worth 2004, no pet.).

The answer to this question is that the Geisendorffs did provide such proof—the boundary is the old Tyler to Porters Bluff Road, as seen in the chain of title. The sole question (and the one remaining to be determined by the continuing lawsuit with the other defendants) is whether the location of the old Tyler to Porters Bluff Road as it existed previously is the same as the location of the current FM Road 1861.

However, as pointed out before, the description in the deed of the 26-acre tract claimed by that Coker claims specifically calls for the old Tyler to Porters Bluff Road to be its north boundary line, but says that its location is about 183 feet south of the current FM Road 1861.[8] The chain of title proven by the Geisendorffs also calls for the north boundary line of the 131-

---

[8]The north boundary of the 26-acre tract as claimed by Coker and defined by his deed is described as 183 feet south of FM Road 1861, which placed it in the "center of the original Porters Bluff and Tyler Road, now abandoned."

acre tract to be the old Tyler to Porters Bluff Road, the primary difference being that the Geisendorffs claim that the location of that road is the same as the current FM Road 1861. Irrespective of whether the Geisendorffs are correct or Carmichael and Langham (and Coker) are correct as to the identity of the location of the road to which the older deeds refer, the outcome is the same: the called 26-acre tract claimed by Coker lies entirely within the boundaries of the 131-acre tract proven by the Geisendorffs to belong to them. Accordingly, the controversy concerning the location of the north boundary line is not dispositive of the conflicting claims between Coker and the Geisendorffs. Not having been dispositive of the issue of title, the answer by the jury that the Geisendorffs had failed to prove the location on the ground of the 131-acre tract was properly ignored by the trial court in granting the judgment NOV in favor of the Geisendorffs as to the 131-acre tract.

We affirm.


Bailey C. Moseley
Justice


Date Submitted:     May 23, 2012
Date Decided:       June 13, 2012

11